Poncet DAVIS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12275.

United States Court of Appeals Sixth Circuit.

Oct. 13, 1955.

Edmund D. Doyle, Columbus, Ohio, and Llewellyn A. Luce, Washington, D. C. (Charles A. Poellnitz, Florence, Ala., Marc J. Wolpaw, Cleveland, Ohio, James C. Herndon, Akron, Ohio, on the brief), for appellant.

Eben H. Cockley, Asst. U. S. Atty., Cleveland, Ohio (Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from a conviction on a charge of willfully attempting to defeat and evade payment of income tax.

Appellant, Poncet Davis, a resident of Akron, Ohio, during the tax years of 1945 through 1948, was president, treasurer, and sole stockholder of the Robbins Tire & Rubber Company, Inc., an Alabama corporation, which was engaged in manufacturing and selling rubber products to individuals and corporations throughout the United States. Its plant was located at Muscle Shoals, Alabama, while the office of the company, consisting of a three-room suite, was located in the Mayflower Hotel at Akron, where the corporate books and records were kept and where appellant conducted the business of the corporation. Apart from appellant Davis, who completely dominated and controlled the affairs of the company, the office staff at Akron consisted of appellant's personal secretary—who

was also secretary of the corporation—and the bookkeeper, office manager, and two employees who did typing and bookkeeping.

The way in which the business of the corporation was carried on was as follows: In Alabama, the company prepared invoices covering purchase orders and sent duplicate invoices, with a remittance statement consisting of a list of checks that had been received, to the Akron office. The checks representing purchases of merchandise which were received in Alabama were likewise forwarded to Akron and were there received by the employee who was appellant's secretary as well as the corporation secretary. Appellant then would instruct her to turn over to him the checks from six large companies purchasing from appellant's corporation. In order to have the checks of these companies sent directly from such purchasers to the Akron office, appellant sent letters enclosing bills of lading to them, and requesting such companies to forward the checks in payment of the merchandise directly to the Akron office. The letters sent to these companies stated: "Please send us here your check covering the above shipment as soon as you receive it," and were signed by appellant as president. Although the corporation secretary testified that duplicates of these letters were kept in the files, none of the letters, checks, or bills of lading was ever submitted to the special agents of the Bureau of Internal Revenue when they were conducting their examination of the corporate records by appellant or anyone in the office. They were all obtained from the purchasers.

Large numbers of checks received by appellant from the above companies were cashed at banks in Akron by the secretary and also, at various times, by the two employees who did typing and bookkeeping; and they testified that they cashed these checks pursuant to appellant's instructions and turned over the cash to him, and on some occasions, placed the cash in the safe in his office. At the bank, when the cash was withdrawn on the checks, it was placed in big envelopes, or when a large check—as high as $23,000—was cashed, it was wrapped up in a brown paper package to be carried back to appellant. On several occasions, the vice president of the bank called appellant and informed him that it was not customary banking procedure to hand out so much currency at one time and to cash such checks. Great quantities of the cash received by appellant were used by him to purchase banker's checks payable to him and to the corporation; and these checks were used by appellant to purchase stock in his own name, or afterward converted into cash by him. None of the checks from the six large purchasing companies was entered in the books or records of appellant's corporation, nor did the corporate records reflect any sales of merchandise to these companies during the tax years in question. None of the banker's checks purchased for cash by appellant and made payable to the corporation was ever reflected on the corporate books, nor were any of them deposited in the company's bank account. Furthermore, proceeds from the customers of appellant's corporation were deposited to the personal bank accounts of appellant and his wife by appellant's secretary. It appears also that during the tax years in question, appellant made a gift to his wife of $100,000 in cash, although at that time he had less than $1,200 in his bank account. All checks received from customers other than the six large companies above mentioned were reflected on the corporate books and records, but from the latter, there was no trace of the large cash receipts.

Internal Revenue agents testified on the trial that from the above mentioned transactions, appellant had unreported taxable income during the taxable years of $857,252.08, on which a tax of $729,000 was due.

The district court charged the jury that the income in question was received, in the first instance, by the corporation, of which appellant was president, treasurer, and sole stockholder; that money

received by a corporation was not income to an individual unless the corporation funds were in some way transferred or diverted to the individual, and became property over which he exercised dominion and control and treated as his own, to the exclusion of any interest therein by the corporation; and if they found that appellant, as the sole owner of the corporation, diverted funds of that corporation to himself personally and exercised control over them and treated them as his own, that would constitute taxable income that he was required by law to include in his income tax return.

On the subject of taxable income, the district court instructed the jury that income received from any source constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it, and that this occurs when cash is received by an individual in a manner which allows him freedom to dispose of it or use it at will. The trial court further instructed the jury on the subject of false and fraudulent failure to report taxable income and willful attempt to evade payment of taxes payable. The jury returned a verdict finding appellant guilty; and he appeals.

On review, appellant contends that the evidence did not support the conviction and that the trial court erred in refusing to instruct the jury as requested by appellant, in excluding proffered evidence, and in rulings upon the burden of proof.

At the outset, it should be emphasized that this is not a case where the government relies merely on the finding of large amounts of cash and property in the possession of an individual. Here, not only are the large amounts of cash and property found, but it is also ascertained when they were received, where they came from, and how much they were, at every period during the time in question.

■■ We are of the opinion that the evidence sustained the conviction. Appellant was indicted for willfully attempting to evade and defeat a large part of his personal income taxes, in violation of Title 26 U.S.C.A. § 145(b). The elements of the offense defined by the statute are: (1) an affirmative willful attempt to defeat and evade, and (2) the existence of a tax liability in excess of that reported.

■ "Gains or profits and income derived from any source whatever" are included in gross income for the purpose of taxation of income. Title 26, § 22(a), of the Internal Revenue Code. The above provision includes not only lawful, but also unlawful gains, and an unlawful gain constitutes income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. "That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it." Rutkin v. United States, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833. In such a case, the gain to the recipient does not depend upon whether the party from whom he receives the cash has legally or properly transferred it to him. On the contrary, the gains to the recipient which are subject to taxation may not only be unlawful gains of a civil nature, but may also be unlawful gains of a criminal nature.

■■ Appellant contends in this case that, whether the cash which he took from his wholly owned corporation was a "taxable gain," depends upon whether the corporation had sufficient surplus to cover a dividend distribution, as otherwise there would be no way in which he could receive such cash as a gain taxable to him and, since there is no proof of such a surplus, he is only a holder of the cash for the benefit of the corporation. However, it does not make any difference whether he received it as a legal distribution of cash as the result of a dividend, or whether he took it fraudulently, using his wholly owned corporation with its false bookkeeping methods

and concealment of sales and receipts to hide the fact that he was secretly acquiring from this source the cash, over which he exercised command, control, and dominion, and from which he realized economic gain and benefit. For "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. It is the command over property and the enjoyment of its economic benefit which are recognized as a proper basis for taxation. Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. It is not necessary to go into the legality of the so-called distribution by appellant's wholly owned corporation to himself, or his extraction of the cash from the corporation, as it clearly appears that through the fraudulent transactions in which he was engaged, he received the cash over which he had complete control, which he took as his own, treated as his own, which resulted in economic value to him, and for which he probably never would have been required to account, had it not been for the discovery of the fraud on the revenue which he was perpetrating. Briggs v. United States, 4 Cir., 214 F.2d 699.

■ Nor was it necessary to prove that the cash appellant got from his corporation was taxable income of the corporation, as contended by appellant, under his theory that nothing he received was taxable unless it was taxable income of the corporation. If appellant had been doing business as an individual and retained a million dollars of receipts from his customers, as his own, using the cash for personal investments and expenditures, and concealing from the government, through false bookkeeping entries and fraudulent income tax returns, the fact that he had received and kept as his personal property such a huge sum, there is no doubt that he would be accountable for that money as income which is required to be reflected in his income tax return. What appellant did was to take funds, individually, from his wholly owned corporation, which he completely dominated and controlled. In other words, he merely took the funds from himself under a different name. Kann v. Commissioner, 3 Cir., 210 F.2d 247. He could not embezzle funds from his wholly owned corporation. United States v. Augustine, 3 Cir., 188 F.2d 359. Appellant insists that the funds taken by him from his corporation cannot be considered gain, since others, presumably creditors of the corporation, might be able to assail the transaction and title to the property which was in his possession. But the money constituted gain to appellant for the reason that, as the Supreme Court has said, he had the freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it. Rutkin v. United States, supra. Here there was more than the bare receipt of property or money, or the misuse of money entrusted to a servant, as was the case in Lashells' Estate v. Commissioner, 6 Cir., 208 F.2d 430.

Appellant makes much of the fact that the government has not fixed a label of some kind on the funds that he took from his corporation. It is not necessary to describe them as additional salary, illicit bonuses, or commissions, or anything more than wrongful diversions, since, as above mentioned, substance controls over form, and taxation is concerned with the actual command over the property taxed.

■ As for the claim that the trial court erred in placing upon appellant the burden of explaining that the gross receipts of his corporation did not constitute taxable income of appellant, the court did not thrust such a burden upon him. While, of course, the burden of proof does not shift in a criminal case, it is the rule that when the government establishes a prima facie case, it is then for the defendant to overcome the inferences reasonably to be drawn from the proven facts. Thus, evidence of unex-

plained funds or property in the hands of a taxpayer establishes a prima facie case of understatement of income, and it is then incumbent on him to overcome the logical inferences to be drawn from such proof. United States v. Hornstein, 7 Cir., 176 F.2d 217, 220. The government is not required to establish income tax evasion by the same processes and formalities which a taxpayer is required to observe in making his return. The existence of unreported income may be demonstrated by any practical method of proof that is available in the circumstances of the particular situation. It is not incumbent upon the government, in making a prima facie case of evasion, to prove the nonexistence of any other deductions than those which the taxpayer has claimed in his return. If the taxpayer legally has other deductions than those which he has claimed, it is his privilege to show them and explain them as part of his defense; Clark v. United States, 8 Cir., 211 F.2d 100, 103; and if a man has a business of a lucrative nature and is constantly receiving money and depositing it to his own account and using it for his own purposes, this is proof that he has income, and if the amount exceeds exemptions and deductions, that the income is taxable. Gleckman v. United States, 8 Cir., 80 F.2d 394.

The claim of error that the court improperly excluded from consideration by the jury evidence that the checks of the six large companies, payable to appellant corporation, had been included by the government in the gross receipts of the corporation for taxation, is without merit. The liability of appellant corporation for income taxes has, in the circumstances of this case, nothing to do with appellant's evasion of his personal income taxes; and the claimed evidence has no probative value as to appellant's guilt of the offense charged against him personally. Nor did the trial court err in excluding from the consideration of the jury evidence that appellant had been indicted in his capacity as president of the corporation, or evidence of settlement discussions carried on between the government and appellant, as to the tax liability of his corporation. Such evidence, likewise, has no probative value on the issue of appellant's guilt.

Error is also assigned on the refusal of the trial court to charge the jury that if they found that appellant was holding, for his corporation, the cash he had received from the corporation checks, it must have returned a verdict of not guilty. There was no evidence to justify an inference that appellant was holding the funds for the corporation, but, in fact, all of the evidence indicated the contrary. The trial court correctly refused an instruction not justified by the evidence, the tendency of which, if given, would only have encouraged baseless speculation.

In overruling a motion for a new trial, the district court held that the funds received by appellant constituted a constructive dividend as a matter of law. A misconstruction of law in denying a motion for a new trial does not invalidate the ruling where sound reasons exist in support thereof. Other claims of error based upon the court's refusal to instruct the jury in the language requested by appellant are not meritorious, as the court gave the substance thereof, and appellant was not prejudiced by having the instructions given in language other than in the form requested.

In consideration of the foregoing, the judgment of the district court is affirmed.