UNITED STATES of America,
Plaintiff-Appellee,

v.

James C. CURTIS, Defendant-Appellant.

No. 85–5070.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 25, 1985.

Decided Jan. 28, 1986.

James A. Shuffett (argued), Shuffett and Shuffett, Lexington, Ky., for defendant-appellant.

Thomas L. Self (argued), Lexington, Ky., for plaintiff-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

This is the appeal of James C. Curtis from his conviction for income tax evasion

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, Southern Division, sitting by designation.

pursuant to 26 U.S.C. § 7201. The appeal raises three questions: 1) the sufficiency of the evidence supporting the conviction; 2) the correctness of the jury instructions regarding the definition of income; and 3) the correctness of the trial judge's refusal to allow expert testimony and refusal to give an instruction on the unsettled and complex nature of the law.

Defendant was indicted on October 3, 1984, on three counts of income tax evasion for the calendar years 1978, 1979, and 1980. Count I of the indictment charged that for the year 1978, defendant reported adjusted gross income of $5,234 and paid taxes of $4, when his true adjusted gross income was $37,920.35 and the taxes due were $7,282.07. Count II of the indictment charged that defendant reported adjusted gross income of $4,773 for the year 1979 and paid no taxes, when he should have declared an adjusted gross income of $48,-088.15 and paid $11,288.05 in taxes. Count III of the indictment charged that for the year 1980, defendant reported an adjusted gross income of ·$11,762 and paid $1,043 in taxes, when his true adjusted gross income was $63,208.43 and his tax liability was $20,325.27.

The charges against defendant arise from his operation of the Meat Shop, a wholesale meat retailer. Curtis is the president and sole shareholder of the business. Most of the Meat Shop's revenue comes from its sales of meat to the Fayette County Detention Center, which paid for its purchases by issuing monthly checks to the Meat Shop.

This case concerns portions of thirty-five checks from the Detention Center to the Meat Shop that Curtis deposited in his personal checking and savings accounts during 1978, 1979, and 1980. Curtis did not include this money as income when filing his individual tax returns. Instead, defendant declared only his salary from the Meat Shop, a small amount of income from a second job in 1978, and some interest income from the bank. The Meat Shop declared and paid taxes on all of its proceeds from the Detention Center, including the

amounts Curtis deposited to his individual accounts, with one exception. That exception was a check dated May 17, 1978 in the amount of $5,381.14. Neither Curtis nor the Meat Shop declared that money as income.

During 1978, 1979, and 1980, Curtis also made some payments to the Meat Shop by writing checks or depositing his paychecks. The checks that defendant wrote back to the corporation had the word "loan" written on them. The money Curtis paid to the Meat Shop was deducted from the Detention Center checks deposited in Curtis' accounts in calculating the undeclared amounts of adjusted gross income charged in the indictment.

Curtis maintains that the amounts that were transferred to his personal accounts were interest-free loans to him from the Meat Shop. He contends that the money he paid to the Meat Shop was in partial repayment of these loans. The government disagrees, arguing that Curtis received income from the corporation. According to the government, the checks Curtis wrote to the Meat Shop were initial loans from him to the corporation.

At the trial the government produced the relevant corporate and individual tax returns, and established the flow of money from the Detention Center to the Meat Shop and Curtis. The government called as its final witness an Internal Revenue Service field auditor who testified that in his opinion the money that Curtis received from the Meat Shop was taxable income.

The defendant called only one witness, a C.P.A. named David Wilkerson. He stated that the money that Curtis transferred to his personal accounts from the corporation "should have been accounted for as loans" which are not deductible by the corporation or taxable as income to the recipient. Wilkerson reasoned that the money could not be regarded as salary, for the corporation did not take a tax deduction for the amounts received by Curtis. The money also could not be deemed a dividend, for the corporation had no retained earnings and its balance sheet reflected no dividend

payments. Wilkerson then stated that he could only conclude that the money was a loan from the Meat Shop to Curtis. He testified that such tax-free loans were common, and that they represented a tax planning opportunity.

The trial court submitted all of these matters as a part of the case to the jury, which convicted Curtis on all three counts. Curtis now appeals his conviction on the several grounds indicated above.

## I. Sufficiency of the Evidence

■ Curtis was convicted of three counts of violating 26 U.S.C. § 7201, which provides that:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony ...

The Supreme Court has stated that there are three elements to the offense described by § 7201. The elements are: 1) willfullness; 2) the existence of a tax deficiency; and 3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). Curtis contends that in the present case, the government failed to show the existence of a tax deficiency, because no taxes were due. Specifically, Curtis argues that all that the government established at the trial was that the corporation had made certain amounts of money available to him. Defendant contends that this is insufficient to establish that he owes taxes on these amounts.

This case is governed by a prior decision of this court, *Davis v. United States*, 226 F.2d 331 (6th Cir.1955), *cert. denied*, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956). Davis, like the defendant here, was the president and sole shareholder of a corporation. He converted checks made out to himself and the corporation for his personal use, and neither the corporation nor Davis declared that income on their tax returns. The court affirmed Davis' conviction for willfully attempting to evade and defeat tax, in violation of 26 U.S.C. § 146(b). In reaching this conclusion, the court reasoned that the money Davis took from the corporation should have been included in his gross income, as the money represented a gain to Davis. The *Davis* opinion found that gain constitutes income which should be declared on individual tax returns when

its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. "That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it." *Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833.

226 F.2d at 334.

*Davis* also addressed the appellant's argument that the trial court unjustifiably shifted the burden of proof of tax evasion from the government to him:

As for the claim that the trial court erred in placing upon appellant the burden of explaining that the gross receipts of his corporation did not constitute taxable income of appellant, the court did not thrust such a burden upon him. While, of course, the burden of proof does not shift in a criminal case, it is the rule that when the government establishes a prima facie case, it is then for the defendant to overcome the inferences reasonably to be drawn from the proven facts. Thus, evidence of unexplained funds or property in the hands of a taxpayer establishes a prima facie case of understatement of income, and it is then incumbent on him to overcome the logical inferences to be drawn from such proof.... (I)f a man has a business of a lucrative nature and is constantly receiving money and depositing it to his own account and using it for his own purposes, this is proof that he has income, and if the amount exceeds

exemptions and deductions, that the income is taxable.

*Id.* at 335–36 (citations omitted).

In the present case, as in *Davis,* the government established that defendant took money from the corporation and deposited it to his personal account. Curtis presented no evidence that he had an obligation to repay the corporation for the money he received. He thus failed to overcome the logical inference to be drawn from the government's evidence, which was that the money was income to Curtis.

Curtis distinguishes *Davis* on the grounds that the Meat Shop declared and paid taxes on the money in dispute here, whereas the corporation in *Davis* did not declare or pay taxes on the disputed funds. Curtis also argues that the Meat Shop's tax returns and balance sheets indicate that the money could not have been salary or dividends to him, so that the money must be regarded as a loan.

With these arguments, Curtis attempts to focus the attention of this court on the activities of the Meat Shop and away from his own activities. This approach was squarely rejected in *Davis:*

> Appellant contends in this case that, whether the cash which he took from his wholly owned corporation was a "taxable gain," depends upon whether the corporation had sufficient surplus to cover a dividend distribution, as otherwise there would be no way in which he could receive such cash as a gain taxable to him and, since there is no proof of such a surplus, he is only a holder of the cash for the benefit of the corporation. However, it does not make any difference whether he received it as a legal distribution of cash as the result of a dividend, or whether he took it fraudulently.... For "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers,* 281 U.S. 376, 378, 50 S.Ct. 336 [337], 74 L.Ed. 916. It is the command over property and the

enjoyment of its economic benefit which are recognized as a proper basis of taxation.

> . . . .

> Appellant makes much of the fact that the government has not fixed a label of some kind on the funds that he took from his corporation. It is not necessary to describe them as additional salary, illicit bonuses, or commissions, or anything more than wrongful diversions, since, as above mentioned, substance controls over form, and taxation is concerned with the actual command over the property taxed.

*Id.* at 334–35 (citations omitted). *Davis* thus holds that an individual has received income when he gains complete dominion and control over money or other property, thereby realizing an economic benefit. It does not matter what the money represents from the standpoint of the corporation.

■ The court finds that *Davis* should be applied to the present case. *Davis* clearly establishes that the government presented sufficient evidence of the existence of a tax deficiency to support Curtis' conviction.

## II. Challenges to the Jury Instructions on the Definition of Income

Curtis next objects to two of the instructions given by the trial court. The first of the two instructions, number 20, is taken from *Davis v. United States, supra.* It reads:

> Income received from any source constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it, and that this occurs when cash is received by an individual in a manner which allows him freedom to dispose of it or use it at will.

Defendant argues that instruction 20 contradicts instruction 19, which describes the calculations of gross income, adjusted

gross income, and taxable income.[1] Curtis contends that instruction 20 should not say that income received from any source constitutes "taxable income." Instead, instruction 19 correctly states that "taxable income" is the sum remaining after deductions and exemptions are subtracted from adjusted gross income.

Curtis also argues that instruction 20 contradicts instruction 21, which states that loans do not constitute income.[2] He refers specifically to the last portion of instruction 20, which states that taxable income occurs "when cash is received by an individual in a manner which allows him freedom to dispose of it or use it at will." Curtis maintains that instruction 20 labels every receipt of unrestricted cash, including loans, as income. This allegedly contradicts the statement in instruction 21 that loans are not income.

■ "In reviewing a trial judge's instruction to a jury, we must look at the charge as a whole and we will not reverse unless the instruction as given had a tendency to confuse or mislead the jury." *Farace v. Independent Fire Ins. Co.*, 699 F.2d 204, 297 (5th Cir.1983) (citations omitted); *Carruba v. Transit Casualty Co.*, 443 F.2d 260, 264 (6th Cir.1971). After reviewing instruction 20 in the context of its surrounding instructions, the court concludes that it must be affirmed. The instructions, taken as a whole, are not misleading or otherwise prejudicial. Instruction 21 clearly states that interest-free, undocumented loans from corporation to shareholder are properly excluded from the gross income of the shareholder, and instruction 20 does not contradict or obscure this instruction. While the trial court might have been more careful about its use of the term "taxable income," it did not commit reversible error, for the jury was flatly given a correct statement of the law as it relates to receipt of loans.

Curtis also challenges the following instruction:

1. Instruction 19 reads as follows:

The first step in arriving at the income of an individual upon which the tax is imposed is a determination of the gross income of the individual. Gross income generally means all income from whatever source derived including (but not limited to) compensation for services, including fees, commissions, and similar items; gross income derived from business; gains from dealings in property; and interest and dividends.

After having determined the gross income of an individual, the next step provided by the statutes for arriving at the income upon which the tax is computed is to subtract from the gross income such deductions as the statutes permit. That is, an individual is permitted to deduct from gross income all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business or other profit-seeking endeavors, including (but not limited to) salaries paid to employees, rentals for property used in the business, and for certain losses, not reimbursed by insurance, incurred in the trade or business of other profit-seeking endeavors.

The amount remaining after subtracting the allowable deductions from gross income is termed adjusted gross income. Then, in determining taxable income the taxpayer is first permitted to deduct from adjusted gross income either the optional standard deduction fixed by law or, in the alternative, the amounts paid during the year for certain purposes limited by law, such as for charitable contributions, interest, taxes, medical expenses, casualty losses, and other items not pertinent here. Then finally, the taxpayer is allowed a deduction of $750.00 for 1978 and $1,000.00 for 1979 and 1980 for each qualified exemption. The resultant figure is termed taxable income, that is to say the sum on which the income tax is levied.

2. Instruction 21 states that:

Loans or advancements do not constitute gross income as that term is defined by the Internal Revenue Code. Likewise, a return of capital invested in a corporation by a stockholder does not constitute gross income.

The law, for the tax years in question, did not require the taxpayer to maintain any specific form of written documentation for loans from or to his corporation and the law did not require the taxpayer or the corporation to charge interest to the other for such loans. Likewise, for the years in question, it was not illegal for the taxpayer to make loans to his corporation or for the corporation to make loans to him. If you find from the evidence that the portion of the receipts received by Mr. Curtis for the years in question constitute loans, advancements, or a return of capital invested, you are instructed that such receipts do not constitute taxable income.

The funds from the Lexington Fayette County Urban Detention Center in question were received in the first instance by The Meat Shop, Inc., of which the defendant, James C. Curtis, was president and sole stockholder. You are further instructed that such money received by a corporation is not income to an individual unless the corporation funds are in some way transferred or diverted to the individual, and become property over which he exercises dominion and control and treated as his own, to the exclusion of any interest therein by the corporation.

If you find beyond a reasonable doubt that James C. Curtis, as the sole owner of The Meat Shop, Inc., diverted funds of that corporation to himself personally, and exercised control over them and treated them as his own, that would constitute taxable income that he was required by law to include in his income tax return.

Defendant once more objects to the instruction on the grounds that it tells the jury to find taxable income whenever a person receives cash over which he has control. Again, Curtis' argument must fail. The challenged instruction states that the jury may conclude that Curtis received income from the Meat Shop only if he held the money "to the exclusion of any interest therein by the corporation." This phrase comports with the statement in instruction 21 that Curtis did not receive income from the Meat Shop if the money was a corporation loan. The court concludes once again that the instructions, read as a whole, did not prejudice Curtis and should be affirmed.

### III. The Law as Unsettled or Complex

At the close of the government's case, it moved *in limine* to exclude the testimony of a defense witness who was proffered to testify that the area of tax law governing the treatment of corporation distributions to shareholders was unsettled and complex. The trial court granted the motion, holding that defendant could not present this evidence unless he could establish that he was confused or had relied on the expert's advice. The defense acknowledged that it could not make this showing. Curtis now complains that the trial court's ruling unjustifiably deprived him of a defense on the issue of the willfulness of his conduct.

Defendant also objects to the trial court's refusal to give his proposed instruction number 13–B. This instruction tells the jury that it may consider the unresolved nature of the tax law in determining whether defendant willfully evaded taxation. The instruction also states that if the jury finds the law to be unsettled or complex, then defendant lacked the requisite intent to violate the law, regardless of whether or not defendant knew of the legal uncertainty.[3]

Curtis' objections to the trial court's granting of the motion *in limine* and to its refusal to give proposed instruction 13–B are based primarily on *United States v. Garber*, 607 F.2d 92 (5th Cir.1979). The defendant in *Garber* received over $200,000 for allowing medical suppliers to extract rare antibodies from her blood. Mrs. Garber failed to report the payments she received for her blood components, and she was convicted for willfully attempting to

---

**3.** Defendant's proposed instruction 13–B reads as follows:

There has been testimony relating to the unsettled nature of the law pertaining to those transactions which are non-taxable events, such as loans and repayments of loans, returns of capital, and those transactions which are taxable events and comprise forms of income such as salary or constructive dividends.

I instruct you that when the characterization of such amounts is problematical, as a matter of law, the unresolved nature of the law is relevant to show that the Defendant

may not have been aware of the responsibility to report an item or may simply have made an error in judgment. Furthermore, the relevance of a dispute in the law does not depend on whether the Defendant knew of the conflict. If you determine that this area of the tax law relating to loans, returns of capital, and constructive dividends is vague, unsettled, complex or debatable, then, as a matter of law, the Defendant lacks the requisite intent to violate the law and therefore cannot be found guilty of willfully underreporting such items, the taxability of which is so uncertain and problematical.

evade federal income tax for 1970, 1971, and 1972.

At the time Mrs. Garber was prosecuted, no court or agency had ever decided whether payments for blood donations are income that is subject to taxation. Mrs. Garber argued in the trial court that she could not have willfully evaded the tax because the law was unsettled. She offered to call an expert witness to testify that the tax treatment of the blood sale proceeds was a novel and uncertain question. The trial judge refused to allow this testimony, describing the issue of taxability and legal uncertainty as matters of law for the judge. Based on the extensive evidence taken on Mrs. Garber's state of mind, other than evidence concerning the status of the tax law, the jury convicted her.

The Fifth Circuit reversed Mrs. Garber's conviction, finding that the trial court mistakenly "reserved to itself the job of unriddling the tax law." 607 F.2d at 97. The court held that a jury deciding whether a defendant acted willfully may consider the uncertain state of the law, as revealed by expert testimony, as evidence of the defendant's state of mind. Moreover, the court declared that "the relevance of a dispute in the law does not depend on whether the defendant actually knew of the conflict." *Id.* at 98. It reasoned that even if defendant had consulted the law, she would not and could not have discovered how to comply with it. *Id.* The court concluded with the observation that "[a] criminal proceeding pursuant to section 7201 is an inappropriate vehicle for pioneering interpretations of tax law." *Id.* at 100.[4]

■ After carefully reviewing *Garber* and other cases, this court declines to follow and rejects *Garber* for several impor-

tant reasons. First, *Garber* allows juries to find that uncertainty in the law negates willfulness even when the defendant is unaware of that uncertainty. This contradicts the prior cases on willfulness, which "consistently require factual evidence of the defendants' state of mind to negate willfulness under any theory." *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 97 (2d Cir.1983), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); Note, *Criminal Liability for Willful Evasion of an Uncertain Tax,* 81 Colum.L.Rev. 1348, 1357 (1981). Willfulness is personal. It relates to the defendant's state of mind. It does not exist in the abstract. Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant.

Second, the *Garber* approach distorts the role of expert witnesses and the purpose of their testimony. Expert testimony is intended to "assist the trier of fact to understand the evidence or to determine a fact in issue ..." Fed.R.Evid. 702. *See also Garber, supra,* at 106 (Ainsworth, J., dissenting). Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations. *See Marx & Co. v. Diners' Club,* 550 F.2d 505, 509–10 (2d Cir.1977), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); Note, *supra,* at 1362. The *Garber* approach also creates problems for the jurors listening to expert testimony. Jurors might be confused by opposing opinions of law offered by different experts. *See United States v.*

**4.** The Fifth Circuit appears to have retreated from the sweeping language used in *Garber,* however. In *United States v. Burton,* 737 F.2d 439 (5th Cir.1984), the court affirmed the lower court's refusal to allow testimony from a tax professor that defendant's theory of taxation was plausible but not legally accepted. The Fifth Circuit found that evidence of legal uncertainty need not generally be received in cases where the defendant was unaware of the law.

Such evidence is admissible only in cases involving a level of uncertainty "approaching legal vagueness," or in cases addressing a "novel or unusual application of the law." 737 F.2d at 444. The court summarized its reading of *Garber* as follows: "In short, we read *Garber* no more broadly than its facts in deciding that in other cases the judge will ordinarily be the sole source of the law." *Id.*

*Ingredient Technology Corp.,* 698 F.2d at 97. *Garber* would also force jurors to take their instructions on the law from expert witnesses as well as from the trial judge. Any differences in the legal rules given by the expert and the judge would be another potential source of confusion.

Finally, and perhaps most significantly, *Garber* requires the jury to assume part of the judge's responsibility to rule on questions of law. *Garber* asks the jury to read and interpret statutes to determine whether or not the governing law is uncertain or debatable. This function has traditionally belonged to the judge, as:

> The jury is not composed of lawyers; the typical juror is untrained in legal affairs. To attempt to explain the myriad rules of judicial construction, the complexity of legal principles, or the function of precedent would hopelessly divert the jury from their preeminent duty of assessing appellant's guilt.

*Garber, supra,* 607 F.2d at 105 (Ainsworth J., dissenting). *See also United States v. Mallas,* 762 F.2d 361, 364 n. 4 (4th Cir.1985).

The trial court in the present case properly granted the government's motion *in limine* and properly refused to give defendant's proposed instruction 13–B. For each of the reasons set out earlier in this case, evidence of the unsettled or complex nature of the law is irrelevant, and instructions to the jury on this subject are not proper.

Defendant's conviction is affirmed.