**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Richard D. REED (86–3379), Julia Ann Reed (86–3380), Defendants-Appellants.**

Nos. 86–3379, 86–3380.

United States Court of Appeals,
Sixth Circuit.

Argued April 2, 1987.

Decided June 2, 1987.

---

Julia Ann Reed, pro se.

Charles E. McFarland, Newton Falls, Ohio, Denis H. Mark (argued), Waller, Mark & Allen, Denver, Colo., for defendants-appellants.

Robyn Jones, Asst. U.S. Atty., Columbus, Ohio, Patrick J. Hanley (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before WELLFORD and NELSON, Circuit Judges, and COHN, District Judge *.

WELLFORD, Circuit Judge.

Appellants Richard and Julia Reed, husband and wife, were each charged with three counts of wilfully attempting to evade federal income taxes in violation of 26 U.S.C. § 7201 in the years 1980, 1981, and 1982, and were jointly charged with one count of conspiracy to defraud the United States for the period of January 1, 1980 through April 23, 1983, in violation of 18 U.S.C. § 371. These charges were based on appellants' failure to file federal income tax returns or pay federal income taxes for the years 1980 through 1982 and their falsely claiming exemption from withholding of federal tax from their wages.

Richard Reed, a somewhat sophisticated taxpayer who holds a degree in business administration, admitted to investigating IRS agents that the Reeds had not filed tax returns in 1980, 1981, or 1982. He told the agents, and still contends, that he studied the tax code and decided that filing a tax return was voluntary and that a taxpayer need not pay taxes until the IRS sent a bill and made a valid assessment. The Reeds also reported on their W–4 forms that they were exempt from withholding in the years 1980 through 1982.

The Reeds fought the Internal Revenue Service in this case every step of the way, including resistance to enforcement of the tax summons and proceedings for discovery information, and challenging the validity of the indictment. They also sought voluminous discovery, including eighty-five Treasury Department files, ten Justice Department files, eight sections of the Internal Revenue Manual, every IRS report related to the indictment, Government Accounting Office reports, and information on the jurors. The district court denied the Reeds' request for these materials. They also filed motions to suppress evidence, to dismiss for government misconduct, and to dismiss for vindictive selective prosecution. These motions were denied. At the close of the government's case, defendants moved for the acquittal of Julia Reed and the court denied this motion. At the end of the trial, the jury found both of the Reeds guilty as charged. The Reeds then filed another motion for acquittal of Julia Reed, alleging insufficient evidence to support

* The Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

her conviction. The district court denied this motion and sentenced both defendants. The Reeds now appeal, challenging the denial of the motions for acquittal, the district court's exclusion of certain evidence, and the denial of the motion to dismiss.

At trial the government presented evidence of the following gross wages for the years in question: Richard Reed earned $21,631.98 in 1980, $23,783.56 in 1981, and $15,584.22 in 1982; Julia Reed earned $9,126.88 in 1980, $7,035.35 in 1981, and $11,705.67 in 1982. In each of these years, the government conceded that the Reeds might properly claim certain deductible expenses and capital losses with respect to payments of home mortgage interest, real estate taxes, sales tax, interest and finance charges, management fees and losses on commodity investments, state income taxes, medical insurance premiums, and charitable contributions. Most of these expenses were incurred jointly or by Richard Reed individually. The only deductions apparently attributable solely to Julia Reed were for sales tax on the car registered in her name, interest and finance charges based on her Mastercard, and interest on a loan taken out in her name. The deductions apparently attributable solely to Richard Reed were interest and finance charges on loans and credit cards in his name and the management fees and losses on investments undertaken by him.

The evidence indicated that if the Reeds had filed joint tax returns, which they had done in years immediately before those in dispute, their taxable income and tax due, taking the deductions into account in a fashion consistent with their actions, would have been as follows:

| YEARS | TAXABLE INCOME: | TAX DUE: |
| --- | --- | --- |
| 1980 | $21,573.76 | $3,277.05 |
| 1981 | 22,929.50 | 3,986.79 |
| 1982 | 24,841.97 | 4,107.17 |
| | TOTAL | $11,371.01 |

If the Reeds had filed separate returns, splitting the jointly held deductions and each deducting expenses and losses held in their own names, the taxable income and tax due would have been as follows:

| NAME: | YEAR: | TAXABLE INCOME | TAX DUE |
| --- | --- | --- | --- |
| Richard Reed | 1980 | $14,771.69 | $2,628.59 |
| Richard Reed | 1981 | $18,127.89 | $4,065.95 |
| Richard Reed | 1982 | $18,888.90 | $4,163.67 |
| Julia Reed | 1980 | $ 6,790.07 | $849.09 |
| Julia Reed | 1981 | $ 4,800.61 | 488.92 |
| Julia Reed | 1982 | $ 6,534.35 | 728.03 |

**Total combined tax due on separate returns— $12,924.25**

Finally, appellant Julia Reed maintained and the evidence demonstrated that if she had taken all of the deductions available to both of the Reeds, she would have owed no taxes for the years in question. Both the Reeds' expert witness and the government's expert witness testified to this at trial. The government's witness also testified that if the Reeds had reported all of the deductions on a separate return for Julia Reed and none on Richard Reed's return, the taxes due from both would have been as follows:

| YEAR | TAX DUE FROM JULIA REED | TAX DUE FROM RICHARD REED |
| --- | --- | --- |
| 1980 | −$29.32 (refund) | $4,259.03 |
| 1981 | 0 | $5,943.23 |
| 1982 | 0 | $6,381.64 |
| TOTAL: | −$29.32 | $16,583.95 |

This latter method, if utilized, would have resulted in a total tax liability for the Reeds of approximately $4,000–$5,000 *more* than other available methods shown above. The government's expert witness testified, moreover, that she could have claimed all of the deductions only if she could show that *she paid* them. The Reeds presented no evidence indicating that Julia Reed actually paid all of the deductible expenses; neither testified at trial. The evidence also failed to show that Julia Reed independently had the means and funds to make all of the payments that resulted in deductible expenses.

The first issue presented on appeal is whether the trial judge erred in denying Julia Reed's motions for acquittal. Denial of a motion for acquittal is error only if the evidence against the defendant is insufficient to support a conviction, giving the benefit of reasonable favorable inferences to the prosecution. *United States v. Adamo*, 742 F.2d 927, 934 (6th Cir.1984), *cert. denied sub nom Freeman v. United*

*States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). Appellants assert that the government's proof must "be such as will exclude every reasonable hypothesis except that of guilt." We have expressly rejected that argument, however, in *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984). As indicated, the reviewing court must view the evidence and all reasonable inferences therefrom in the light most favorable to the government. *United States v. Bavers,* 787 F.2d 1022, 1026 (6th Cir.1985).

■■■ The elements of the tax evasion offense are (1) wilfulness, (2) existence of a tax deficiency, and (3) an affirmative act constituting evasion. *United States v. Curtis,* 782 F.2d 593, 595 (6th Cir.1986). Appellants claim that the government did not meet its burden of proving a tax deficiency, because the Reeds offered evidence of available tax deductions. While availability of deductions is clearly part of an effective defense to an alleged tax deficiency, *see, e.g., Davis v. United States,* 226 F.2d 331 (6th Cir.1955), *cert. denied,* 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956), a party claiming a deduction must ordinarily establish the right to claim a deduction or an exemption. We have ruled that although the burden of proof does not shift in a criminal case, once the government establishes a prima facie case, the defendant must present evidence to overcome the inferences reasonably drawn from the proven facts. *See Curtis,* 782 F.2d at 595 (quoting *Davis,* 226 F.2d at 335–36). The question here, therefore, is whether the government presented sufficient evidence to establish a prima facie case that a tax deficiency existed as to Julia Reed, and whether she presented evidence sufficient to overcome that inference through evidence that sufficient deductible items were actually attributable to her.

■■■ The Reeds do not dispute that they both earned taxable income and failed to file returns for the years in question. The only issue is whether available deductions might offset Julia Reed's income to the extent that no deficiency existed. Based on the evidence presented at trial, the most

reasonable inference the jury would draw is that the Reeds would have chosen to minimize their tax liability by filing joint returns, or at least by splitting the joint deductions on separate returns, in which case they owed taxes for each year in question. Filing joint returns was the practice they had previously followed. This inference is also the most logical one considering the evidence in the light most favorable to the government. *See Bavers,* 787 F.2d at 1026. Thus, the government presented sufficient evidence for the jury to conclude that a tax deficiency would exist as to Julia Reed for each of the years in question.

The Reeds presented, through their expert witness, only one hypothetical situation in which Julia Reed would have conceivably owed no tax: by means of separate filings and Julia's legitimately claiming all of the deductions incurred by both of the Reeds. The evidence did not indicate, however, that all of the deductions were actually available to Julia Reed. Most of the deductions were jointly incurred and some of them appeared to be attributable only to Richard Reed. The jury, then, could reasonably determine that the Reeds failed to rebut the logical inference that a tax deficiency existed as to both defendants. *Cf. Curtis,* 782 F.2d at 596 (defendant presented no evidence to rebut the inference that money he received was income). The evidence was sufficient for the jury to find that a tax deficiency existed as to Julia, and we therefore conclude that the district court properly denied the motions for acquittal.

Appellants also argue that the trial judge erred in excluding certain evidence that appellants sought to introduce concerning activity that took place after the time frame set forth in the indictment (after April 23, 1983). The evidence defendants sought to introduce included W–2 Forms and payroll records showing taxes withheld in subsequent years, testimony regarding 1983 taxes and events, and correspondence between the Reeds and the government. Appellants argue that this evidence was relevant to the issue of wilfullness. *See, e.g., United States v. Richards,* 723 F.2d 646, 649 (8th Cir.1983) ("subsequent tax paying conduct is relevant to the issue of

willfulness in a prior year."); *United States v. Thiel,* 619 F.2d 778, 781 (8th Cir.) (no abuse of discretion in admitting taxpayer's returns for prior or subsequent years), *cert. denied,* 449 U.S. 856, 101 S.Ct. 152, 66 L.Ed.2d 70 (1980).

The trial judge excluded the evidence on the basis of Rule 403, finding that any probative value of this information concerning subsequent years was outweighed by the dangers of unfair prejudice, confusion, and that it might be misleading to the jury. *See* Fed.Rule of Evid. 403. Appellants argue that this ruling was not only error, but was prejudicial to them in that the evidence they sought to introduce would have enabled them to make arguments in closing that they otherwise could not have made.

■ We find no error in the ruling. The exhibit concerning correspondence between the Reeds and the government was never actually offered as evidence. This correspondence, moreover, took place in 1985 while litigation against the Reeds was pending. The correspondence thus did not relate to their intent in not filing in 1980–82. The information appellants sought to introduce through the W–2 Forms and payroll records, namely that federal taxes were withheld from their salary in subsequent years, was introduced through the testimony of their employers and IRS personnel. This testimony, moreover, explained that the taxes were withheld only after the IRS instructed the employers to withhold taxes, and despite the protests of the Reeds. The W–2 Forms, standing alone, would not indicate whether the Reeds voluntarily submitted to withholding. The Forms alone were thus potentially misleading and also offered no information not otherwise presented through testimony of witnesses. Excluding evidence under Rule 403 is a matter within the broad discretion of the trial court. *See, e.g., United States v. Zipkin,* 729 F.2d 384, 389 (6th Cir.1984); *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). We conclude that the trial court acted within its reasonable discretion in this case.

■ The final issue in this case concerns the Reeds' motion to dismiss for vindictive prosecution. Defendants filed the motion and sought discovery relevant to that motion, but the court denied those materials. At trial, the evidence allegedly indicated that the government initiated the criminal investigation against defendants almost immediately after defendants had written letters to Congressmen. When this evidence came to light at trial, defendants renewed their motion to dismiss for vindictive prosecution. In addition to the evidence of timing, defendants offered a letter and a copy of the indictment indicating that the charges filed against them were raised at some juncture in the prosecution process from misdemeanors to felonies. The court considered all of this evidence and denied the motion to dismiss. The judge found that whatever the government's reason for changing the misdemeanor charge to a felony charge, no evidence suggested that the decision to prosecute or to charge defendants with a felony was based on improper or vindictive grounds.

Defendants have not shown any evidence of a reasonable likelihood of vindictiveness in this case. Accordingly, the district court properly denied defendants' motion. *See United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) (standard is reasonable likelihood of vindictiveness); *United States v. Andrews,* 633 F.2d 449, 453 (6th Cir.1980) (same), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981).

For the foregoing reasons, we AFFIRM the district court in all respects.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and opinion of the court, and write separately only to emphasize that under any hypothesis as to how the Reeds might have filed their returns, they failed to show that there would not have been a tax deficiency as to both of them.

An interesting question would have been presented if the evidence had shown that all of the deductions in question could legitimately have been claimed by Mrs. Reed on separate returns and that no tax would have been due from Mrs. Reed if the couple

had chosen to handle the deductions in that manner. In point of fact, however, the record affirmatively shows that many of the deductions could not properly have been claimed by Mrs. Reed had separate returns been filed. Some of the expenditures in question were paid by checks drawn on a checking account maintained by Mr. Reed alone. Other expenditures consisted of interest payments on charge accounts maintained solely by Mr. Reed. Still other expenditures were for state and local taxes on Mr. Reed's income and for sales taxes that could have been attributed only to Mr. Reed had the couple filed separate returns. Finally, the Reeds' expert witness attributed to Mrs. Reed a sizable capital loss incurred in a commodities trading account maintained solely in the name of Mr. Reed. Mrs. Reed failed to demonstrate that she would have had no tax deficiency if she had filed separate returns claiming all of the deductions that she was legally entitled to claim, so this court need not decide—and, as I understand the opinion, does not purport to decide—whether Mrs. Reed could properly have been convicted if the facts had been shown to be otherwise.