SYLVESTER WOODS AND M. LOIS WOODS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woods v. Commissioner
Docket No. 11649-88
United States Tax Court
T.C. Memo 1989-611; 1989 Tax Ct. Memo LEXIS 611; 58 T.C.M. (CCH) 673; T.C.M. (RIA) 89611; November 9, 1989
Stanley R. Kirk, for the petitioners. Dennis G. Driscoll, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6654
6661
1984
$  44,933.95
$  2,246.70
*
$  2,501.18
$ 11,233.50
1985
221,094.18
11,054.70
**
12,384.04
55,273.50
1986
135,547.12
6,777.35
***
6,289.00
33,886.75
*612 Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue. After concessions, the issues for decision are (1) whether deposits into bank accounts maintained in the name of a church constituted income taxable to petitioners; (2) whether petitioners are entitled to charitable contribution deductions for amounts transferred to the church; (3) whether petitioners had unreported interest income during the years in issue; (4) whether petitioners are entitled to deductions for interest and other expenses claimed on Schedule A to their individual income tax returns; and (5) whether petitioners are liable for self-employment tax and additions to tax as determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Detroit, Michigan, with their three children, at the time they filed their petition. Petitioners prepared their own individual income tax returns for 1984, 1985, and 1986 using W-2 Forms, canceled checks, and receipts but no formal books of accounts. During and prior to the years *613 in issue, petitioner M. Lois Woods (Mrs. Woods) was employed by the Board of Education of the City of Detroit as a teacher. Petitioner Sylvester Woods (Mr. Woods) was a minister of the church known as the "Unity and Divinity of Christian Philosophic Science" (the church). Mr. Woods received a bachelor of science degree from Tennessee State University. Mr. Woods founded the church in 1975. During the years in issue, the church was a nonprofit corporation under the laws of the State of Michigan. During those years, Mr. Woods was the president of the church; Mrs. Woods was the vice president of the church; and Mrs. Woods' brother, Arthur Grady, was the treasurer of the church. Grady, however, had no involvement with maintenance of the books and records of the church, and he did not have signatory authority over any bank account maintained in the church name. No one other than petitioners exercised any control over church funds. The church did not have a formal membership or congregation during the years in issue. In December 1980, funds of the church were used to purchase real property at 20200 Grand River, Detroit, Michigan, for $ 140,000. The building was renovated with church *614 funds and used for office space and church events. In 1983, the building was severely damaged by fire, and the church received at least $ 10,000 in insurance proceeds for the damage to the building. In January 1985, the church sold the building and real estate to the Burger King Corporation for $ 205,000. After the church sold the property located at 20200 Grand River, it did not purchase another building for its operations. The operations were thereafter conducted from petitioners' residence. The proceeds received by the church, including the sales proceeds and the insurance proceeds, were invested with Chrysler Financial Corporation. During the years in issue, two accounts, savings account no. XXX-X-XXX936-7 and checking account no. XXXXX53-54, were maintained at the National Bank of Detroit in the name of the church. Petitioners also maintained various bank accounts in their own names during those years. After exclusion of transfers among the accounts and amounts attributable to nontaxable sources, deposits into the various accounts were $ 57,044.60 in 1984, $ 407,969.46 in 1985, and $ 283,301.90 in 1986. The foregoing amounts, reduced by income reported on petitioners' *615 income tax returns, represent unreported income of petitioners in the amounts of $ 36,142.47 for 1984, $ 385,163.34 for 1985, and $ 244,011.80 for 1986. Amounts deposited into bank accounts in the name of the church constituted income of petitioners because they exercised total dominion and control over those funds and expended them for their personal living expenses and other personal purposes, as indicated by the examples set forth in the following paragraphs. In July 1985, a check was drawn on the investment account with Chrysler Financial Corporation, deposited to the savings account in the name of the church, transferred to the checking account in the name of the church, and withdrawn by a check payable to Sylvester Woods in the amount of $ 89,639.73. Sixty thousand dollars was used to purchase real property at 8624 Greenfield, Detroit, Michigan, and $ 29,639.73 was used to purchase a business operated on that property and known as Richardson Collision, Inc. Mr. Woods became the president of Richardson Collision, Inc. Richardson Collision, Inc., filed a Form 1120, U.S. Corporate Income Tax Return, for the fiscal year ended April 30, 1986. Mr. Woods was listed as the sole *616 owner of the corporation on that tax return. In November 1986, $ 65,276.32 was withdrawn from the savings account in the name of the church and used by Mr. Woods to purchase real property located at 8612 Greenfield, Detroit, Michigan, and a business known as Felix Brooks Auto Clinic. The real property was purchased for $ 70,000, with a down payment of $ 10,000 and monthly payments of $ 727.97. The assets of Felix Brooks Auto Clinic were purchased for $ 60,000. On their joint Federal income tax return for 1986, petitioners listed on Schedule E the real property listed at 8612 Greenfield and the real property listed at 8624 Greenfield as rental property. Petitioners reported rental income and claimed expenses in relation to those properties on their Schedule E. During the years in issue, $ 14,092 in funds held in the name of the church was used to pay for a 1983 Cadillac Seville purchased by Mrs. Woods. In January 1984, $ 1,410.67 in funds held in the name of the church was used to pay off a loan received by Mrs. Woods from the Detroit Teachers Credit Union. During 1986, $ 6,089 in funds held in the name of the church was used to make payments on credit cards maintained by *617 Mrs. Woods at the NBD Delaware Bank. In March 1986, Mr. Woods purchased a 38-foot Chris Craft yacht for $ 135,000, causing the yacht to be registered in the name of the church. The funds for purchase of the yacht were withdrawn from the checking account maintained in the name of the church. The yacht was insured in the name of Mr. Woods. During the years in issue, at least $ 2,500 per year was transferred directly from the bank accounts maintained in the name of the church to petitioners' personal checking account. A substantial portion of Mrs. Woods' income from her employment as a teacher was deposited to the savings account maintained in the name of the church. On their Federal income tax returns for the years in issue, petitioners reported the following items, among others: 1984
1985
1986
Wages (Mrs. Woods)
$ 29,189.93
$ 30,661.66
$ 32,406.89
Adjusted gross income
29,257.31
30,969.36
33,265.23
Contributions to the church
14,628.56
15,484.68
16,632.62
Total itemized deductions
22,061.23
22,147.15
22,414.68
Mr. Woods did not report any compensation from the church on petitioners' income tax returns for 1984, 1985, or 1986. On each *618 of the returns, petitioners claimed a refund approximating 95 percent of the Federal income tax withheld from Mrs. Woods' salary. Respondent determined that petitioners were the actual owners of various bank accounts, including those maintained in the name of the church, and used the bank deposits method to reconstruct petitioners' income. Respondent disallowed petitioners' claims that they made charitable contributions to the church. Respondent also disallowed deductions claimed on Schedule A of petitioners' income tax return to the extent that the amounts claimed were paid from church funds or were not substantiated. OPINION Respondent has now conceded that interest and other expenses paid from church funds may be deducted by petitioners if we sustain respondent's determination that income deposited into church bank accounts is taxable to petitioners. Petitioners have not explained the nature of or challenged the taxability of any specific amounts deposited into the bank accounts in issue. Petitioners' opening brief failed to propose findings of fact, as required by Rule 151(e), Tax Court Rules of Practice and Procedure. Respondent's brief requested findings of fact, which *619 petitioners adopted in all material respects in their reply brief. There is, therefore, no significant dispute as to the facts. The parties merely dispute the inferences to be drawn from those facts. Petitioners' contentions in this case are generally that respondent cannot disregard the separate corporate existence of the church; that respondent's reconstruction of their income is improper because their books and records are adequate, and therefore respondent's determination was arbitrary; that respondent erred in disallowing their expenses; and that no additions to tax can be imposed because there are no deficiencies. Each of these contentions is without merit. This case does not depend on burden of proof, because our factual findings and legal conclusions are based on sufficient evidence in the record to justify sustaining all of respondent's determinations that have not been conceded. The books and records maintained by petitioners, to the minimal extent that they existed, were unreliable and inadequate. Mrs. Woods was not present and did not testify at the trial. The testimony of Mr. Woods was impeached by the written records that he had made on prior occasions, was *620 vague, unpersuasive, and inherently improbable and was not worthy of belief. For example, in response to questions from his counsel, Mr. Woods testified as follows: Q * * * has the boat been used for any ecclesiastical purposes? A Oh yes, yes it is. Q Can you describe those uses? A We have had meetings and gatherings and in addition to that use for the kids. We have had -- it was the purpose it was always used for, nothing personal. Q When you say meetings and gatherings can you be a little more specific. A Well they are of a religious nature -- conforming to you know the guidelines of our church -- No specifics were ever provided. With respect to the purported church ownership of one of the auto repair businesses, in response to questions by his counsel, Mr. Woods testified as follows: Q With respect to the land contract, who is identified as the purchaser? A The land contract, Sylvester Woods. Q What about the bill of sale. A Okay. With the bill of sale it's a mistake paid on this but it should have been to the church. They had the right address. Q Who is identified on the bill of sale? A Oh, Sylvester Woods. They're paid by -- Q I believe you *621 testified earlier that the church purchased the business Felix Brooks Auto Clinic, is that correct? A Right. Yes. Q But you're telling us now that the name shown on the land contract as purchaser is yourself. A What the one they have paid by, that's who paid yeah. Q Can you explain the discrepancy. A Well, the only thing I can explain is that they -- they went by the individual who was there. Because the address -- they do not have the home address, they have the right address. They have the wrong name as far as -- actually owner of the assets -- Q Is it your testimony then that it was the church's intent to purchase that business? A Yes, it was. They was the one that paid. Q With respect to the real property would the answer be the same? A No, no, actually was this was on the land contract and I would pay that. On cross-examination, Mr. Woods testified in part as follows: Q And you also have, I believe, stated that you never receive any income from Unity and Divinity of Christian Philosophic Science, is that correct? A No. Q This organization pays for the utilities on your residence is that correct? A Yes. Q Does it pay any of your other family's *622 expenses? Or other expenses or personal expenses? A Personal -- food -- Q Yes. A On occasion. Q How often? A I don't recall. Beyond that, Mr. Woods merely denied that the church paid personal expenses for him and Mrs. Woods. He has not provided any explanation of how payments on Mrs. Woods' credit card accounts constituted bona fide church expenses. It is not necessary to disregard the separate existence of the church or to challenge the tax status of the church as an entity in order to sustain respondent's determinations in this case. Whether they were entitled to the funds or embezzled the funds from the church, petitioners exercised complete dominion and control over deposits into the various bank accounts that were the basis of respondent's determination. See Davis v. United States, 226 F.2d 331, 334 (6th Cir. 1955); see also United States v. Curtis, 782 F.2d 593 (6th Cir. 1986). There is no credible evidence that the church, as such, had income or receipts from any source other than payments by Mrs. Woods from her salary. The amounts paid into church bank accounts by Mrs. Woods, allegedly contributed to the church and deducted *623 on petitioners' tax returns, cannot be allowed as deductible contributions because she did not give up control over those funds and they were, along with other funds in the accounts, used for her purposes. Davis v. Commissioner, 81 T.C. 806, 816-817 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). There is no credible evidence in the record that any of the funds allegedly belonging to the church were used for church functions rather than for petitioners' personal purposes. Petitioners ask the Court to believe that Mr. Woods had no income during the years in issue, that Mrs. Woods contributed half of her salary as a teacher to the church, and that petitioners jointly maintained their life-style on the other half of Mrs. Woods' income. In 1985, for example, petitioners claim to have transferred to the church $ 27,340 out of reported gross income of $ 30,969.36, leaving $ 3,629.36 available for the annual living expenses of petitioners and their three children. Meanwhile, they claim, the church operated two auto repair businesses, maintained a yacht, and held all of its services on the yacht or at petitioners' residence. We cannot *624 accept these contentions. We are, on the contrary, persuaded that petitioners' efforts are simply another case of a transparent attempt "to transmute the commercial into the ecclesiastical" in order to avoid tax on personal income. See Stephenson v. Commissioner, 748 F.2d 331, 334 (6th Cir. 1984), affg. 79 T.C. 995 (1982); Miedaner v. Commissioner, 81 T.C. 272, 280 (1983); McGahen v. Commissioner, 76 T.C. 468, 480 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). The legal issues presented in this case have been addressed innumerable times, and further exposition of them is not necessary or desirable. We are convinced on the evidence that the section 6653(a) additions to tax for negligence are justified. Petitioners have not negated applicability of the self-employment tax or shown that they come within any exception to application of the additions to tax under sections 6654 and 6661. Because of respondent's concessions as to the deductibility of certain items, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on $ 44,934.00. ↩
**. 50 percent of the interest due on $ 221,094.00. ↩
***. 50 percent of the interest due on $ 135,547.00.↩