16 F.3d 1222
 74 A.F.T.R.2d 94-5438
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James L. NEWMAN, Defendant-Appellant.
 No. 93-3289.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1993.
 
 Before MILBURN and BATCHELDER, Circuit Judges; and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant James L. Newman appeals his convictions for three counts of tax evasion, in violation of 26 U.S.C. Sec. 7201, and two counts of filing false corporate income tax returns, in violation of 26 U.S.C. Sec. 7206(1) and 18 U.S.C. Sec. 2. On appeal, the issues are (1) whether defendant's convictions for tax evasion were supported by sufficient evidence, (2) whether the district court abused its discretion in admitting certain prosecution exhibits, (3) whether the district court abused its discretion in permitting a rebuttal expert to testify, (4) whether statements made by the prosecution during closing arguments constituted plain error, and (5) whether the failure of the trial court to give the jury a specific unanimity instruction constituted plain error. For the reasons that follow, we affirm.
 
 I.
 
 2
 At the times relevant to this appeal, defendant was the majority and later the sole shareholder of Mobile Home Estates, Inc. ("Mobile Home"), a manufacturer of mobile homes, and the sole shareholder of MHE, Inc. ("MHE"), a corporation that leased equipment to Mobile Home. Defendant also operated a large farm as a sole proprietorship. During 1985, 1986, and 1987, defendant allegedly received income from a variety of sources related to these businesses, but he failed to report that income on his individual income tax returns and on the corporate income tax returns of Mobile Home and MHE. Consequently, on September 4, 1989, an eight-count indictment was filed against defendant. The first three counts charged defendant with willfully attempting to evade individual income taxes in violation of 26 U.S.C. Sec. 7201.[1] The remaining five counts charged defendant with making and subscribing false corporate income tax returns in violation of 26 U.S.C. Sec. 7206(1) and 18 U.S.C. Sec. 2.[2]
 
 
 3
 At trial, the government alleged that defendant diverted substantial amounts of money from Mobile Home for his personal use. According to government witnesses, the diverted funds arose from several corporate sources including proceeds from sales of mobile homes; rebate checks received from suppliers of appliances for the mobile homes; proceeds from the sale of scrap aluminum, copper, cardboard, and paper generated during the manufacturing of the mobile homes; proceeds from the sale of corporate inventory; and commissions from vending machine sales. A special agent with the Criminal Investigation Division of the Internal Revenue Service testified that defendant deposited these funds into personal bank accounts and then used them to purchase personal assets such as farmland and a residence in Florida. Using a government exhibit which summarized the bank records of defendant for the years 1985-1987, the agent further testified that in some cases, defendant converted checks made payable to Mobile Home into cashier's checks before depositing them into a personal bank account. The agent also stated that the conversion of corporate checks to cashier's checks occurred more frequently after the time defendant purportedly informed prospective buyers of Mobile Home that he diverted corporate income for his own use. Based on the evidence presented, the United States argued that defendant failed to report $247,714.62 in his individual income tax return for calendar year 1985, $199,345.04 in his return for calendar year 1986, and $394,537.69 in his return for calendar year 1987.
 
 
 4
 The government also argued that defendant filed false corporate income tax returns on behalf of Mobile Home. Testifying on behalf of the government, an internal revenue agent stated that Mobile Home failed to report income in the amount of $142,409.83 for calendar year 1985, $224,665.04 for calendar year 1986, and $324,358.75 for calendar year 1987, for a total amount of $691,433.62. As explained by the agent, these amounts arose from many of the same corporate sources that were used by defendant for his personal use, and included proceeds from mobile home sales, rebate checks from suppliers, proceeds from scrap sales, and commissions from vending machine sales. The agent stated that these amounts constituted taxable income to Mobile Home which should have been, but were not, included on its corporate income tax return.
 
 
 5
 Defendant testified on his own behalf and admitted on direct examination that he deposited corporate checks into his personal bank accounts. Defendant explained, however, that he used his personal accounts as "clearing account[s]" so that he could use the monies for loans or advances to the several corporations. J.A. 504. Defendant further testified that the deposits to his personal accounts were documented and that information was later disclosed to the accountants who prepared the income tax returns. Defendant also called a certified public accountant as an expert witness. The expert testified that defendant transferred $725,000.00 from his personal account to Mobile Home in 1985, at least $500,000.00 in 1986, $300,000.00 of which was advanced for a stock redemption, and $775,000.00 in 1987. As later revealed during closing arguments, defendant's theory was that the converted funds were eventually deposited back to the corporation.
 
 
 6
 Seven of the eight counts were submitted to the jury; count 6, which charged defendant for making and subscribing a false corporate income tax return on behalf of Mobile Home for calendar year 1987, was dismissed at the conclusion of the government's case due to a defect in the indictment. The jury found defendant guilty on counts 1 through 5 and not guilty on the remaining two counts. Defendant was later sentenced to 18 months imprisonment on counts 1, 2, 4, and 5 and 24 months imprisonment on count 3, with the sentences to run concurrently. This timely appeal followed.[3]
 
 II.
 A.
 
 7
 On appeal, we review the record to determine whether defendant's convictions were supported by sufficient evidence. United States v. Curtis, 782 F.2d 593, 596 (6th Cir.1986). "[T]he standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 
 8
 In this case, defendant was convicted of three counts of violating 26 U.S.C. Sec. 7201, which provides:
 
 
 9
 Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....
 
 
 10
 To convict an accused of the violation of this statute, the government must establish "the existence of a tax deficiency, willfulness, and an affirmative act constituting evasion or attempted evasion of the tax." United States v. Daniel, 956 F.2d 540, 542 (6th Cir.1992) (citing among others Sansone v. United States, 380 U.S. 343, 351 (1965)).
 
 
 11
 Defendant argues that the government failed to establish a tax deficiency in this case. He argues that at trial the government characterized the diverted funds as unreported income, as opposed to identifying whether those funds constituted dividends, commissions, loans, or loan repayments. By failing to identify the nature of these funds, defendant argues that the government failed to establish "that the receipts involved actually did represent taxable income to [him]." Appellant's Brief 18. As a result of the government's failure to prove the existence of a tax deficiency, defendant argues that he was denied due process.
 
 
 12
 In a tax diversion case, the government must initially establish a prima facie case that money received by an individual constituted income and that the recipient understated the amount of income he earned. United States v. Davis, 226 F.2d 331, 334-35 (6th Cir.1955), cert. denied, 350 U.S. 965 (1956). To prove that an individual received income, the government need not fix a label on the funds that were allegedly diverted. Id. at 335. Rather, because "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed--the actual benefit for which the tax is paid," Corliss v. Bowers, 281 U.S. 376, 378 (1930), the government need only show that the recipient
 
 
 13
 has such control over [the funds] that, as a practical matter, he derives readily realizable economic value from it. " 'That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it.' "
 
 
 14
 Curtis, 782 F.2d at 595 (quoting Davis, 226 F.2d at 334 (quoting Rutkin v. United States, 343 U.S. 130, 137 (1952))). The government may use "any practical method of proof that is available in the circumstances of the particular situation." Davis, 226 F.2d at 336.
 
 
 15
 Once the government has established its prima facie case, "it is then for the defendant to overcome the inferences reasonably to be drawn from the proven facts." Id. at 335. This obligation placed on the defendant is not meant to shift the burden of proof in the criminal case. United States v. Reed, 821 F.2d 322, 325 (6th Cir.1987). Instead, it is designed so as not to require "the government, in making a prima facie case of evasion, to prove the nonexistence of any other deductions than those which the taxpayer has claimed in his return." Davis, 226 F.2d at 336.
 
 
 16
 Given the evidence introduced at trial, we conclude that the evidence was sufficient to establish a tax deficiency. Through the testimony of a special agent with the Criminal Investigation Division of the Internal Revenue Service, the government established that defendant understated his income in the amount of $247,714.62 in 1985, $199,345.04 in 1986, and $394,537.69 in 1987. These amounts were calculated on the basis of funds intended for Mobile Home which were deposited by defendant in his own account. Once those funds were deposited, defendant had for all practical purposes derived readily realizable economic value from them. This was evident by the defendant's use of the funds for personal use such as to purchase farmland and to purchase a residence in Florida. Thus, irrespective of whether defendant obtained those funds lawfully or unlawfully, and irrespective of the label the government placed on the funds, those amounts constituted income to defendant.
 
 
 17
 Defendant suggests, however, that he submitted sufficient evidence to rebut the government's case. Specifically, he notes that he advanced to Mobile Home $725,000.000 in 1985, $150,000.00 in 1986, and $775,000.00 in 1987. He argues that those amounts should have been deducted from the amount he allegedly diverted from corporate sources and that had they been deducted, a tax deficiency would not have existed.
 
 
 18
 We are unpersuaded by defendant's suggestion for several reasons. First, defendant fails to cite any applicable case or Internal Revenue provision which would establish that the funds he transferred to Mobile Home should have been deducted from the amounts he diverted from corporate sources. Instead, defendant states that the government has previously deducted payments made by a defendant to a corporation, of which the defendant was sole shareholder, in its calculation of the undeclared amounts of income of the defendant, see Curtis, 782 F.2d at 594, and that the same should have been done in this case. However, the manner in which the government chooses to calculate unreported income necessarily varies from case to case. Thus, while we note that the government might have been able to deduct the amounts defendant transferred to Mobile Home in this case, it was not legally obligated to do so.
 
 
 19
 Second, defendant argues that "there is a distinct probability, based on the pattern of [defendant] in lending money to his corporations and borrowing some, that many of these receipts from Mobile Home deposited in his business bank account represented loans or loan payments." Appellant's Brief 18 (emphasis added); see also Appellant's Reply Brief 2. To argue that a mere probability exists, however, is insufficient to rebut the logical inferences arising from the government's evidence. If defendant "legally has other deductions than those which he has claimed, it is his privilege to show them and explain them as part of his defense[.]" Davis, 226 F.2d at 336 (citing Clark v. United States, 211 F.2d 100, 103 (8th Cir.1954), cert. denied, 348 U.S. 911 (1955)).
 
 
 20
 Finally, though defendant makes the point that included within the amounts he transferred to Mobile Home were stock redemption payments made on behalf of the corporation in the amount of $150,000.00 in 1986 and $75,000.000 in 1987, even assuming arguendo that those amounts should have been deducted from the income defendant purportedly obtained, defendant still would have understated the amount of income in his returns for those years, and thus would have still violated 26 U.S.C. Sec. 7201. See United States v. Johnson, 319 U.S. 503, 517-18 (1943) (government need not prove the full amount of understated tax charged in the indictment). Thus, in this case we conclude that the United States presented sufficient evidence of the existence of a tax deficiency to support defendant's convictions under 26 U.S.C. Sec. 7201.[4]
 
 B.
 
 21
 As part of its case-in-chief, the government offered three exhibits which were intended to summarize the amount of funds purportedly diverted by defendant. The first exhibit, admitted as Exhibit 218, contained a bar chart displaying both the number of "unreported income checks" defendant received and the number of "unreported income checks used to purchase cashier's checks." J.A. 171. Exhibit 218 also marked the date when defendant allegedly told prospective purchasers of Mobile Home that he diverted corporate income to his personal use, labeling that time as follows: "August 1986 [Defendant]'s Statement to Prospective Purchasers." Id.
 
 
 22
 The two remaining exhibits offered by the government contained the type of sources from which defendant and Mobile Home obtained the corporate funds and the amounts that were received from each source. One of these exhibits, Exhibit 219, contained the title "Mobile Home Estates Schedule of Unreported Income," J.A. 172, and the other exhibit, Exhibit 220, contained the title "[Defendant] Schedule of Unreported Income." J.A. 173. At the time of offering, defendant objected to the introduction of each of these exhibits, contending that by using the term "unreported income," the government was misleading the jury because it was the burden of the government to prove that in fact those amounts constituted income. The district court overruled the objections and admitted them into evidence.[5]
 
 
 23
 On appeal, defendant argues that the district court abused its discretion in admitting these three exhibits. While he acknowledges that charts may be used when the contents of voluminous information cannot be conveniently examined in court, defendant argues that the exhibits in this case were prejudicial because "[t]hey assumed as fact that the receipts received by [defendant] and Mobile Home were 'Unreported Income,' a fact which the jury was to determine." Appellant's Brief 22.
 
 
 24
 Exhibits used not as evidence but, rather, as devices to summarize testimony and admitted documents are admissible under Federal Rule of Evidence 611(a), which empowers the court to control the presentation of evidence in order to aid the fact-finder. United States v. Paulino, 935 F.2d 739, 753 (6th Cir.), cert. denied, 112 S.Ct. 315, 323 and 660 (1991) and 112 S.Ct. 883 (1992).[6] By permitting the use of summary exhibits in a criminal case, however, a danger exists in that "[t]he jury might rely upon the alleged facts in the summary as if these facts had already been proved, or as a substitute for assessing the credibility of witnesses." United States v. Scales, 594 F.2d 558, 564 (6th Cir.), cert. denied, 441 U.S. 946 (1979) (citations omitted). To alleviate such danger, "a summary should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." Paulino, 935 F.2d at 753. Thus, a summary is admissible as an exhibit "provided that it does not mislead the jury by unfairly emphasizing parts of the proponent's proof or creating the impression that the facts underlying the summary ..., if disputed, have been conclusively established." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence p 1006 (1993). Because the admission of a summary is committed to the sound discretion of the district court, the district court's ruling will not be overturned absent an abuse thereof. Paulino, 935 F.2d at 753.[7]
 
 
 25
 In this case, the district court did not abuse its discretion in admitting Exhibits 218-220. Each of those exhibits summarized approximately 200 transactions committed by defendant. Many of these transactions were complex, involving several conversions of the funds before finally being deposited in defendant's numerous bank accounts. Moreover, classifying the funds which were purportedly diverted as "unreported income" did not mislead the jury. These charts were admitted during the testimony of the government's expert witnesses and included only those amounts which had already been admitted as evidence. On cross-examination, these experts indicated that the "unreported income" classification was based upon their professional opinions.
 
 
 26
 Additionally, any potential danger which arose from the exhibits was reduced by the following instruction stated by the district court: "You have seen some charts and summaries that may help you explain the evidence. That is their only purpose, to help explain the evidence. They are not themselves evidence or proof of any fact." J.A. 672. Defendant seeks to reduce the validity of this instruction by noting that the trial court also instructed the jury that the "exhibits that have been admitted into evidence are evidence." Id. Viewing the instructions in their entirety, however, we conclude that the instructions adequately reduced any danger inherent in the summaries. See Curtis, 782 F.2d at 597. (" 'In reviewing a trial judge's instructions to a jury, we must look at the charge as a whole and we will not reverse unless the instruction as given had a tendency to confuse or mislead the jury.' ") (quoting Farace v. Independent Fire Ins. Co., 699 F.2d 204, 207 (5th Cir.1983)).
 
 
 27
 The two cases upon which defendant relies do not compel a different result. In Steele v. United States, 222 F.2d 628, 629-31 (5th Cir.1955), the court admitted two government exhibits: one purported to be a computation of defendant's income on a net worth basis and the other purported to be a computation of that income on an expenditures-available funds basis. The jury was also permitted to take the exhibits into the jury room. Under the unique facts of that case, the court of appeals held that the exhibits unduly tainted the jury. Steele's holding apparently was later limited to its facts in United States v. Diez, 515 F.2d 892, 905 n. 21 (5th Cir.1975), cert. denied, 423 U.S. 1052 (1976). The second case relied upon by defendant, Lloyd v. United States, 226 F.2d 9 (5th Cir.1955), is equally unavailing. In that case, although the court stated that the government charts should not be encumbered by conclusory titles such as "Unreported Net Income of [defendant]," id. at 17, the court expressed no opinion as to whether the admission of such charts bearing the potentially prejudicial caption constituted an abuse of discretion. Accordingly, we conclude that the district court properly admitted the summary charts as exhibits.[8]
 
 C.
 
 28
 As part of its case in rebuttal, the government called an examiner of potentially fraudulent documents employed by the Internal Revenue Service. According to the government, the purpose of this witness was to attack the veracity of a Mobile Home stock ledger, which had been introduced by defendant. At trial, defendant's counsel objected to the testimony of the witness, arguing that by introducing the witness, the government was "putting on an affirmative case[,]" J.A. 528, which was inappropriate on rebuttal. The district court permitted the expert to testify. Defendant argues that the district court erred in this respect.
 
 
 29
 The admission of expert testimony is governed by Fed.R.Evid. 702, which provides as follows:
 
 
 30
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 31
 To determine the admissibility of expert testimony under Rule 702, we have adopted a four-part test: (1) the witness must be qualified as an expert, (2) the subject of the testimony must assist the jury in ascertaining the relevant issues, (3) the witness' testimony must be in conformity with a generally accepted explanatory theory, and (4) the evidence may be excluded only where its relevance is substantially outweighed by the danger of unfair prejudice. United States v. Smith, 736 F.2d 1103, 1105 (6th Cir.) (per curiam), cert. denied, 469 U.S. 868 (1984); see also United States v. Vance, 871 F.2d 572, 577 (6th Cir.), cert. denied, 493 U.S. 933 (1989) (citing United States v. Green, 548 F.2d 1261, 1268 (6th Cir.1977)). To allow an expert witness to testify is a decision within the sound discretion of the district court. United States v. DeClue, 899 F.2d 1465, 1473 (6th Cir.1990) (citing Hanson v. Parkside Surgery Ctr., 872 F.2d 745, 750 (6th Cir.), cert. denied sub nom. Hanson v. Arrowsmith, 493 U.S. 944 (1989)). Thus, we review such a decision under an abuse of discretion standard.
 
 
 32
 In arguing that the district court erred, defendant relies on the probative value/prejudicial effect prong. In defendant's view, the purpose of the expert was to ascertain whether the entries made on the stock ledger were made contemporaneously with the issuance or redemption of the stocks in question. Given that interpretation, he argues that the expert's testimony was irrelevant because the time the transactions were recorded had no bearing on whether the transactions in fact occurred. Defendant argues that the testimony of the expert was prejudicial because the testimony implied that the stock ledger was manufactured and thus that defendant acted illegally.
 
 
 33
 We conclude that the district court did not abuse its discretion in permitting the rebuttal expert to testify. One of the issues at trial was whether defendant purchased corporate stock of Mobile Home on behalf of the company. Defendant contended at trial that he purchased the stock and that as a consequence, the money he paid should have been deducted from the amount of funds he allegedly diverted from Mobile Home. To support his position, defendant offered into evidence a stock ledger which indicated that 22 shares of Mobile Home stock had been redeemed in 1986. The government's expert witness, testifying on rebuttal, was called to cast doubt on the reliability of the stock ledger and to rebut defendant's claim that the 22 shares of stock had been redeemed for the benefit of the corporation. Thus, the rebuttal expert's testimony was probative.
 
 
 34
 Moreover, the probative value was not substantially outweighed by the danger of unfair prejudice to defendant. During his direct testimony, the expert opined that based on the positioning of the numbers in the stock ledgers of Mobile Home, the entries of the issuance and redemption dates were either made at the same time or the ledger had remained in the same typewriter for the entire time between the two dates. At no time, however, did the expert say that the ledgers were fraudulent. Additionally, on cross-examination, defendant's counsel elicited from the expert that the entries on the stock ledger did not necessarily correspond to the dates that the stock was actually issued, thus potentially negating the value of the expert's opinion. Given these circumstances, we will not disturb the district court's decision.
 
 D.
 
 35
 During closing arguments, counsel for the government stated:
 
 
 36
 The only thing that the defendant has done in this case to suggest he doesn't owe this money is to ask you to consider phony amended tax returns based on this phony entry in the stock journal. The only thing that supports those amended tax returns that appears anywhere in any corporate record at all is this one single entry. That and that alone and our last witness was the expert who showed you that this thing is bogus.
 
 
 37
 J.A. 651.
 
 
 38
 And finally, you can infer that he acted willfully if he makes a statement which he thinks is going to get him off and that statement is later shown to be false and you know what these are in this case? You all know it. It's those amended tax returns supported by this false document. His only defense in this case is this transaction and those amended tax returns and even that is only a partial one as I explained. This is false. Those amended tax returns are false. When a person does something like that, you're allowed to infer that he acted with guilty knowledge that he was trying to cover up a crime.
 
 
 39
 J.A. 653.
 
 
 40
 [Defense counsel] spent a little time walking you over to this phony stock ledger. I remind you, this is the only, the exclusive, no other ones exist corporate records which support the amended tax returns and it's a phony. Who testified about it? Defendant's expert. Who knew what really happened? The defendant, and [defense counsel] didn't dare put him on the stand--
 
 
 41
 J.A. 654. At no time did defendant object to these statements. On appeal, he argues that he was denied a fair trial because the closing arguments implied that he prepared false stock ledgers and thus had committed another crime other than the ones for which he was on trial.
 
 
 42
 Because defendants failed to object to the closing arguments, we review only for plain error. United States v. Farley, 2 F.3d 645, 655 (6th Cir.1993). Federal Rule of Criminal Procedure 52(b) is the applicable rule governing our review for plain error. Under Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Recently, in United States v. Olano, 113 S.Ct. 1770 (1993), the United States Supreme Court set forth the four relevant criteria in determining whether a Rule 52(b) remedy is appropriate: (1) we are to consider whether an error occurred in the district court. Id. at 1777. Absent any error, our inquiry is at an end. However, if an error occurred, (2) we then consider if the error was plain. Id. If it is, then (3) we proceed to inquire whether the plain error affects substantial rights. Id. at 1777-78. Finally, even if all three factors exist, (4) we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of the proceedings. Id. at 1779.
 
 
 43
 Viewing the comments of the prosecutor against the entire record, we conclude that the prosecutor's argument was not erroneous. Both the government and defendant presented testimony as to the truthfulness of the Mobile Home stock ledger. Though the prosecution's characterization of the stock ledger as "phony" and "bogus" may have been misleading, ample evidence in the record supports the contention that the ledger might have been fabricated. The prosecution's statements also did not unduly prejudice the jury. This is especially true given the statement by the district court to the jury that "[t]he government also alleges ... that the defendant caused false entries to be made in corporate books and records...." J.A. 671 (emphasis added). Furthermore, unlike in United States v. Signer, 482 F.2d 394, 400 (6th Cir.), cert. denied, 414 U.S. 1092 (1973), where this court concluded that suggesting the defendant committed a crime for which he is not on trial may constitute reversible error, the government in this case did not imply that defendant committed any crime other than the ones charged in the indictment. Accordingly, we conclude that relief under Rule 52(b) is inappropriate. See Olano, 113 S.Ct. at 1776-79.
 
 E.
 
 44
 The jury was charged that in order to find defendant guilty of 26 U.S.C. Sec. 7201, it must find that defendant committed "some act" in an attempt to evade or defeat any tax. J.A. 670-71. After having been informed that the alleged act charged in the indictment was the filing of false and fraudulent returns, the jury was then instructed that the government had alleged additional acts as well which could constitute the requisite act. The other acts were defendant's failure to provide his return preparers with complete and accurate information, defendant's entry of false information in corporate books and records, and defendant's use of cashier's checks and out of state bank accounts to conceal taxable income. Though the jury was later instructed that it must unanimously find defendant either guilty or not guilty of the charges, it was not instructed that it must unanimously agree on which act defendant committed to find him guilty under the tax evasion counts.
 
 
 45
 For the first time on appeal, defendant argues that the failure of the district court to give the latter instruction was erroneous. A similar argument, however, was rejected in United States v. Sanderson, 966 F.2d 184 (6th Cir.1992). There, the defendant was convicted of theft of property valued at $5,000.00 or more from a local government agency that maintained a contract with the federal government. See 18 U.S.C. Sec. 666(a)(1)(A). At trial, the government offered two theories for conviction: first, that the defendant committed theft of government supplies, and, second, that the defendant committed theft of employee time. The jury was not instructed that it had to agree unanimously as to which alleged act defendant committed.
 
 
 46
 On appeal, this court held that the district court did not commit plain error by failing to give the jury a specific unanimity instruction. After initially noting that "a jury need not agree on which overt act, among several, was the means by which a crime was committed," Sanderson, 966 F.2d at 187 (citing Schad v. Arizona, 111 S.Ct. 2491, 2496 (1991) (plurality opinion)), this court determined, based upon traditional notions of fairness and due process, that "the theft of government property exemplifies an offense which can be committed by a variety of acts." Id. at 189. Thus, we concluded that "it is not unfair to anticipate that when one steals ... supplies and then orders employees to use such materials in private contract work, both actions will be considered components of the larger, single fraudulent act of theft from the local government." Id.
 
 
 47
 In like manner, the attempt to evade or defeat any tax also exemplifies an offense which can be committed by a variety of acts. This is especially true in light of the fact that the tax evasion statute does not provide for specific types of acts that may constitute the crime but, rather, provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax...." shall be found guilty of tax evasion. 26 U.S.C. Sec. 7201 (emphasis added). Congress failed to limit the methods "by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation." Spies v. United States, 317 U.S. 492, 499 (1943). Thus, as in Sanderson, it is not unfair to anticipate that when defendant committed the several acts alleged by the United States, those actions would be considered components of the single act of evading or defeating a tax. Consequently, we conclude that the instruction was not erroneous.
 
 
 48
 United States v. Duncan, 850 F.2d 1104 (6th Cir.1988), upon which defendant relies, does not compel a different result. In that case, the defendants were convicted of violating 26 U.S.C. Sec. 7206(1) & (2), which prohibits the making and preparation of a tax return containing a false statement as to a material matter. The indictment alleged that the filed return contained two separate and distinct statements which were false. On appeal, the issue was whether the jurors should have been instructed that they must all agree on which particular statement was made falsely. This court stated that the jury should have been so instructed and that the failure to so instruct them constituted reversible error.
 
 
 49
 Duncan is distinguishable, however, in at least two significant respects. First, Duncan was premised upon the Fifth Circuit's opinion in United States v. Gipson, 553 F.2d 453 (5th Cir.1977), which held that "a federal jury must agree on at least one of multiple alternative 'conceptually' distinct acts that would constitute the actus reus of the crime.' " Duncan, 850 F.2d at 1110. Gipson was later discredited by the Supreme Court in Schad. Schad, 111 S.Ct. at 2498; see also Sanderson, 966 F.2d at 187. Second, Duncan specifically noted that had the defendants been prosecuted for tax evasion under 26 U.S.C. Sec. 7201, which defendant was in this case, "the reasoning would be different." Duncan, 850 F.2d at 1112 n. 8. Thus, under the facts in this case, we place little value on Duncan's holding with respect to the requirement of a specific jury unanimity instruction.
 
 
 50
 Moreover, even assuming arguendo that the jury's verdict must have been unanimous as to one of the alleged acts, we conclude the district court's failure to instruct the jury of that necessity did not constitute error. Generally speaking, "it is not necessary to give specific unanimity instructions unless 1) a count is extremely complex, 2) there is variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." Sanderson, 966 F.2d at 187 (citing Duncan, 850 F.2d at 1114); see also United States v. Sims, 975 F.2d 1225, 1240-41 (6th Cir.1992) (" 'The touchstone has been the presence of a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.' " (quoting Duncan, 850 F.2d at 1114)), cert. denied, 113 S.Ct. 1315, 1617, and 1620 (1993).
 
 
 51
 None of these concerns is present here. The tax evasion counts are not extremely complex in light of their plain terms, which essentially follow the wording of 26 U.S.C. Sec. 7201. Moreover, the acts charged in the indictment; namely, "causing to be prepared and signing a false and fraudulent U.S. Joint Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service," J.A. 10, 11, 12, are closely related to the other acts purportedly committed. Finally, there was no evidence that the jury was, or might have been, confused as to nonunanimity on a necessary element of the offenses charged. Cf. Duncan, 850 F.2d at 1114 ("jury's request for clarification manifested ... a tangible risk of jury confusion and of nonunanimity on a necessary element of the offense charged"). Thus, having found no error in the instructions given by the district court, our plain error inquiry is at an end. See United States v. Olano, 113 S.Ct. 1770, 1776-79 (1993).
 
 III.
 
 52
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Count one charged defendant with filing false individual income taxes for calendar year 1985; count two charged the same offense for calendar year 1986, and count three charged the same offense for calendar year 1987
 
 
 [2]
 Count four charged defendant with filing a false return on behalf of Mobile Home for calendar year 1985; count five charged the same offense for calendar year 1986, and count six charged the same offense for calendar year 1987. Count seven charged defendant with filing a false return on behalf of MHE for the fiscal year ending November 30, 1985, and count eight charged defendant with the same offense for the fiscal year ending November 30, 1986
 
 
 [3]
 We take note of a potential jurisdictional objection to our hearing defendant's appeal of his conviction. Defendant's notice of appeal states as follows:
 Notice is hereby given that the Defendant, James L. Newman, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the final judgment sentencing the Defendant to: twenty-four (24) months confinement on Count 3 of the Indictment in this Case, eighteen (18) months each on Counts, 1, 2, 4 and 5 to be served concurrently with the sentence of confinement for Count 3; two (2) years supervised release to follow confinement; fines of $35,000 on Count 3, and costs of incarceration and supervised release which together total $68,968 and special assessments totalling $250.
 J.A. 35.
 Because the final judgment contains the record of both defendant's conviction and sentence, this notice might be read as either appealing from both the conviction and the sentence or simply from the sentence. If we were to read the notice of appeal as specifically appealing the sentence only, defendant's arguments attacking his conviction would be waived. United States v. Pickett, 941 F.2d 411, 415 n. 3 (6th Cir.1991).
 However, we conclude, as we did in a substantially similar situation in Pickett, that defendant's notice did not make such specific determinations as to limit his appeal from any aspect of the judgment. Moreover, we note that the United States has not raised this question, has briefed defendant's arguments, and has claimed no prejudice from any possible error in the notice. These factors have been considered important in determining whether "we have jurisdiction over an ambiguously worded notice of appeal." Id. (citing Taylor v. United States, 848 F.2d 715, 717-18 (6th Cir.1988)). We therefore address defendant's arguments.
 
 
 [4]
 Defendant was also convicted of making and subscribing false corporate income tax returns in violation of 26 U.S.C. Sec. 7206(1) and 18 U.S.C. Sec. 2. Under 26 U.S.C. Sec. 7206:
 Any person who--
 (1) Declaration under penalties of perjury.--Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;
 shall be guilty of a felony....
 Under 18 U.S.C. Sec. 2:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 Defendant's argument on appeal is premised on the fact that the government failed to prove a tax deficiency. Because it is immaterial whether a tax deficiency exists for violations of 26 U.S.C. Sec. 7206(1), see United States v. Marashi, 913 F.2d 724, 736 (9th Cir.1990), and for 18 U.S.C. Sec. 2, for both of which defendant was also convicted, we do not address whether the government failed to present sufficient evidence to support those convictions.
 
 
 [5]
 When the district court admitted the exhibits into evidence, it failed to identify the applicable rule of evidence it was ruling upon; however, in response to defendant's objection to Exhibit 220, it stated: "These are summaries. I will allow it." J.A. 443
 
 
 [6]
 The government argues that the charts were admissible under Fed.R.Evid. 1006, which provides:
 The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
 However, the charts here are " 'more akin to argument than evidence' since they organize the jury's examination of testimony and documents already admitted in evidence." Paulino, 935 F.2d at 753. Therefore, the charts "strictly speaking, ... do not fall within the purview of Rule 1006." Id. (citing Gomez v. Great Lakes Steel, Div., Nat'l Steel Corp., 803 F.2d 250, 257 (6th Cir.1986)).
 
 
 [7]
 Defendant raised this argument before the district court. Thus, contrary to the government's contention, our review is not under the plain error standard
 
 
 [8]
 Defendant, moreover, argues for the first time on appeal that the government's expert witnesses impermissibly bolstered the testimony of the witnesses at the trial, relying on United States v. Price, 722 F.2d 88 (5th Cir.1983), cert. denied, 473 U.S. 904 (1985). "Price, however, prohibited only an express statement by the expert that he believed the government's witnesses." United States v. Moore, 997 F.2d 55, 59 (5th Cir.1993). Here, the expert witnesses have made no such express statements. Thus, even if we were to assume that defendant made a timely objection at trial, we find no merit in his argument