99 F.3d 1140
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David W. DOLAN, Defendant-Appellant.
 No. 95-1769.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1996.
 
 1
 Before: BOGGS and MILBURN, Circuit Judges; and QUIST, District Judge.*
 
 
 2
 QUIST, District Judge.
 
 
 3
 Defendant-Appellant, David Dolan, appeals from a jury verdict finding him guilty of thirty-eight (38) counts of mail fraud, 18 U.S.C. § 1341. Defendant raises several issues for review. For the reasons stated below, we affirm.
 
 I.
 
 4
 Defendant has been a dentist specializing in endodontics since 1982. He is one of approximately 80 endodontists practicing in Michigan. Endodontists treat the internal portions of teeth and supporting tissue. The bulk of defendant's work consisted of performing root canals, treating problems in teeth containing preexisting root canals, and procedures involving the infection of the teeth and surrounding tissue. In general, root canals comprise 95% of an endodontist's practice; the remaining 5% is comprised of endodontic surgeries.
 
 
 5
 On August 10, 1994, defendant was indicted in the Eastern District of Michigan. The indictment charged defendant with thirty-eight (38) counts of mail fraud pursuant to 18 U.S.C. § 1341. The indictment alleged that defendant defrauded insurance companies through the submission of false billings using eleven different methods. Some of these alleged methods include:
 
 
 6
 --billed each insurance company for the same services;
 
 
 7
 --billed the insurance companies for alleged "medical" services which were in fact "dental" services;
 
 
 8
 --billed the insurance companies for alleged "medical" services when they had already been billed as "dental" services; [and]
 
 
 9
 --billed the insurance companies for services not in fact rendered.
 
 
 10
 Each count of the indictment alleged a separate mailing of an insurance company check to defendant as payment for claimed services.
 
 
 11
 On February 18, 1993, FBI agents arrived at defendant's office to execute a search warrant for patient records and billing information. Pursuant to the search, the agents removed approximately 5,000 patient charts. The Government requested Blue Cross/Blue Shield of Michigan ("BCBSM") to review the charts. BCBSM focused on defendant's medical billings to BCBSM between 1988 and 1992. This sample amounted to 161 charts. This sample was narrowed to the 39 which contained evidence of both medical and dental claims. Fifteen of the 39 were relied upon by the Government in the 38 counts of the indictment.
 
 
 12
 Trial began in United States District Court on February 21, 1995. During the course of the trial the court received into evidence the testimony of Dr. Shirley Austin, a dentist and BCBSM dental program administrator, as an expert witness. The trial court also received tax returns for the defendant's professional corporation for the years at issue. Trial concluded on March 14, 1995. The following day, the jury returned a verdict of guilty on all counts.
 
 
 13
 On July 5, 1995, after adopting the $378,334.33 figure set forth in the amended presentence report as the amount of fraud loss under U.S.S.G. § 2F1.1(b), the trial court sentenced defendant to 24 months of imprisonment and two years of supervised release. The trial court also imposed a $86,715.41 fine and a special assessment of $1,900, and required that restitution be made to the insurers in the amount of $6,263.60. Defendant filed a timely notice of appeal.
 
 II.
 
 14
 Defendant sets forth several arguments challenging his conviction. Defendant argues that the trial court erred: (1) by denying his pretrial motion for a bill of particulars; (2) by failing to give his requested "Unanimity of Theory" jury instruction; (3) by denying his motions for judgment of acquittal; (4) by receiving into evidence the testimony of Dr. Shirley Austin; (5) by receiving into evidence tax returns from defendant's professional corporation; and (6) by relying upon a dollar figure supplied by BCBSM to determine relevant conduct prior to sentencing defendant.
 
 Bill of Particulars
 
 15
 A trial court's refusal to grant a defendant's motion for a bill of particulars is reviewed for abuse of discretion. United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993). In order to succeed on his appeal, defendant must make a " 'showing of actual surprise at trial and prejudice to the defendant's substantial rights by the denial' " of his motion. United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991) (quoting United States v. Paiva, 892 F.2d 148, 154 (1st Cir.1989)).
 
 
 16
 Defendant argues that the denial of the bill of particulars prevented defendant from preparing an adequate defense at trial. Defendant contends that the indictment made several allegations not argued at trial, and that the prosecution referenced four different medical billing insurance codes at trial. Defendant argues that without more specific notice through a bill of particulars, the relevance of the procedural codes and theories as to each of the counts and the alleged scheme remained "shrouded in mystery." Defendant compares his circumstances with that of the defendants in United States v. Bortnovsky, 820 F.2d 572 (2d Cir.1987), wherein the Second Circuit held that the trial court abused its discretion in denying a bill of particulars.
 
 
 17
 In Bortnovsky, the Second Circuit held that defendants' ability to prepare an adequate defense was seriously compromised by the Government's failure to "reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents." Id. at 574. The Bortnovsky court stated that the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." Id. at 575. The defense was held to have been especially compromised when the Government turned over its "mountain" of documents at such a late date that defense counsel had only four days to prepare a defense. Id.
 
 
 18
 In the instant case, however, such tactics are not at issue. At some point prior to September 28, 1994, defendant was provided with a binder containing every document that the prosecution relied upon in drafting the indictment. (Tr., 9/28/94, at 6-7.) Furthermore, under each count, the indictment itself lists: the date of the insurance check; the amount of the check; whether the type of insurance billed was for medical or dental expenses; and the name of the patient. It is undisputed that defendant had adequate access to all materials, including files, seized from his office. In denying defendant's motion, the trial court took note of defendant's access to the patient records and held that the indictment was sufficiently specific to permit defendant to prepare his defense, to prevent unfair surprise at trial, and to raise a double jeopardy bar to subsequent prosecution. Thus, denial of defendant's motion was not an abuse of discretion.
 
 Unanimity of Theory
 
 19
 No party "may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict." Fed.R.Crim.P. 30. Defendant did not object to the trial court's alleged failure to give the jury an augmented unanimity instruction before the jury retired. Because no objection was made at trial, defendant's claim is reviewable under the "plain error" standard.[1] United States v. Sanderson, 966 F.2d 184, 187 (6th Cir.1992) (reviewing specific unanimity instructions). The court must "consider whether the instructions, taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." Id. "Ordinarily it is not necessary to give specific unanimity instructions unless 1) a count is extremely complex, 2) there is variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." Sanderson, 966 F.2d at 187 (citing United States v. Duncan, 850 F.2d 1104, 1114 (6th Cir.1988), cert. denied sub nom. Downing v. United States, 493 U.S. 1025, 110 S.Ct. 732 (1990)).
 
 
 20
 Defendant argues that the trial court judge was required to give an augmented "unanimity of theory" instruction to the jury in order to avoid a "patchwork verdict."[2] Defendant theorizes that there was a tangible risk of jury confusion because each juror could have believed that the individual mailing listed in each count constituted a different "scheme" to defraud because eleven different theories of mail fraud appear in the indictment and at least three different theories were argued at trial. Defendant contends that whenever an indictment involving mail fraud allows different jurors to reach separate conclusions about the existence of a single scheme, a special instruction should be given. See United States v. Merklinger, 16 F.3d 670, 678 (6th Cir.1994) (listing the three elements in a mail fraud case, two of which mention a scheme).
 
 
 21
 In response, the Government argues that mail fraud is a generic offense which may be committed in a variety of different ways and that each count in the indictment set forth clearly how defendant committed the offense. The Government maintains that the instant case does not present a situation where the offense could be committed by separate means under each count. The Government concludes that because none of the counts were set forth in complex language, there was no variance between the indictment and the proof at trial, and there is no tangible risk of jury confusion, there was no reason for the trial court to give an augmented unanimity instruction.
 
 
 22
 We agree with the Government's position. Absent proof that the grand jury was improperly charged, the court must presume that the prosecutor and grand jury charged "but one crime in each count of the indictment." United States v. Mastelotto, 717 F.2d 1238, 1244 (9th Cir.1983) (mail fraud) (citing Fed.R.Crim.P. 8(a)). In short, if the indictment may be read to charge but one crime in each count, the court will do so. Mastelotto, 717 F.2d at 1244. When determining whether each count of an indictment charges defendant with a unity scheme to defraud or with multiple schemes to defraud, the Fifth and Ninth Circuits have recognized that
 
 
 23
 the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme. Naturally, by clear analogy it does not make any difference that the various deceptions were practiced at different places. Nor is it significant that the whole scheme was not planned out in advance. A continuing "intention to devise it," ... or an imperfectly conceived plan to defraud which becomes more and more sophisticated and grandiose as the plan progresses and the assets of the more gullible victims are exhausted, may well constitute a single scheme.
 
 
 24
 Id. at 1245 (quoting Owens v. United States, 221 F.2d 351, 354 (5th Cir.1955)).
 
 
 25
 We believe that each count in the indictment may be read to have charged defendant Dolan with a unitary scheme to defraud. Each count refers to a different mailing, or means of defrauding different people, in furtherance of defendant's scheme to overcharge his patients and their insurance carriers. (Indictment at p II.) While defendant utilized a number of different fraudulent billings practices as part of his scheme, defendant's desire to overcharge various insurance carriers for his work by use of the mails was the sole motivation for his wrongdoings. Furthermore, even if this Court accepts defendant's assertion that the Government argued three rather than eleven theories of fraud at trial, there is no proof that the Government brought evidence of additional schemes before the jury.
 
 
 26
 Defendant's reliance upon United States v. Mastelotto, 717 F.2d 1238 and United States v. Duncan, 850 F.2d 1104 (6th Cir.1988) is misplaced. In Mastelotto, the court held that the trial judge effectively instructed the jury that "even if any particular juror did find the existence of several 'schemes,' the juror could nonetheless vote for conviction if the mailing or phone call was in furtherance of at least 'a scheme in which that defendant was a participant." Mastelotto, 717 F.2d at 1249-50. Thus, the instructions at issue in Mastelotto "required neither unanimity nor a finding of the existence of the charged scheme." Id. In contrast, at the conclusion of defendant Dolan's trial, the trial court judge gave clear instructions on the elements of mail fraud, the nature of the offense, the nature of the term "scheme," and the unanimity requirement. There is no evidence of juror confusion. Furthermore, the Sixth Circuit has noted that Duncan was premised upon a Fifth Circuit opinion, United States v. Gipson, 553 F.2d 453 (5th Cir.1977), which was later discredited by the Supreme Court in Schad v. Arizona, 501 U.S. 624, 637-38, 111 S.Ct. 2491, 2500 (1991). United States v. Newman, 16 F.3d 1222, 1993 WL 503078, at ** 10 (6th Cir. Dec. 7, 1993) (per curiam). As a result, we place "little value on Duncan 's holding with respect to the requirement of a specific jury unanimity instruction." Id.
 
 
 27
 While a jury must agree on all of the elements of an offense, it need not agree on the means by which all the elements were accomplished. United States v. Freshour, 64 F.3d 664, 1995 WL 496662, at ** 7 (6th Cir. Aug. 17, 1995) (citing Schad, 501 U.S. at 637-38, 111 S.Ct. at 2500), cert. denied sub nom. Tino v. United States, --- U.S. ----, 116 S.Ct. 910 (1996) and --- U.S. ----, 116 S.Ct. 1045 (1996). In the instant case, because each juror could reasonably conclude that the individual mailings listed in each count constituted a distinct "means" of furthering defendant's fraudulent scheme, there is no threat that a patchwork verdict resulted. Thus, there was no plain error in denying defendant's request for augmented jury instructions.
 
 Motions for Judgment of Acquittal
 
 28
 A denial of a motion for acquittal is reviewed de novo "under the standard of 'whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.' " United States v. Wuliger, 981 F.2d 1497, 1509 (6th Cir.1992), cert. denied, 502 U.S. 985, 114 S.Ct. 1293 (1992) (quoting United States v. Busacca, 936 F.2d 232, 239 (6th Cir.1991), cert. denied, 502 U.S. 985, 112 S.Ct. 595 (1991)). A jury verdict may be sustained by circumstantial evidence alone. United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984).
 
 
 29
 A. Motion for Partial Acquittal Regarding Count 11
 
 
 30
 Count 11 of the indictment alleges that defendant caused a check to be delivered to his office by mail containing a payment from Jardine, a dental insurance company, in the amount of $428.00 for services he performed for his patient Linda Davis. Defendant notes that no testimony was produced at trial from Jardine indicating that the check mentioned in Count 11 was sent by mail, or issued at all. Thus, defendant contends there is no proof that the mails were used with respect to Count 11. Defendant also claims that because no one explained the discrepancy in the amount alleged in Count 11 and the amount appearing on the face of the check in Exhibit 40(c), $422.30, there was no proof that the billing was fraudulent.
 
 
 31
 The patient who was mentioned in Count 11, Linda Davis, was also mentioned in Counts 8-10. On September 26, 1989, defendant performed an apicoectomy and soft-tissue biopsy on Davis. Davis's patient records indicate that defendant mailed out 7 separate claims relating to her visit, including two to Jardine. Ms. Davis testified that Jardine had been her husband's insurer at that time. Furthermore, Dr. Austin testified that the multiple billings arising out of the single medical procedure performed on September 26, 1989, were improper multiple billings. Also, defendant's billing clerk at the time, Beth Forfinski, testified that defendant's insurance billings were sent out by mail.
 
 
 32
 Based on this evidence, we hold that a rational trier of fact could conclude that it was beyond a reasonable doubt that defendant had billed Jardine through the mails, and that such billing was improper.
 
 
 33
 B. Motion for Acquittal, or in the Alternative, to Strike Allegations from the Indictment
 
 
 34
 Defendant argues that the trial court erred when it denied his motions for acquittal, or in the alternative, to strike allegations in the indictment. Defendant made a motion for "Total and/or Partial Acquittal" at the close of the Government's case and at the close of all the evidence. (R. 38; Tr., 3/6/95, at 88; Tr., 3/14/95, at 95; R. 47). However, in none of these instances did defendant request that the trial court strike allegations from the indictment other than Count 11. Defendant consistently requested that a judgment of acquittal be entered as his sole requested relief. Thus, defendant is not entitled to judicial review on this issue.
 
 
 35
 Defendant argues that if the allegedly deficient allegations were struck from the indictment, it "would have diminished the prejudice of a patchwork verdict based upon multiple theories of fraud not established at trial." (Appellant's Brief at 37.) As stated earlier, there was no danger of a patchwork verdict posed by the Government's theories. Moreover, because defendant does not argue that a rational trier of fact would be unable to convict based upon the remaining allegations in the indictment, the trial court's denial of defendant's motion for acquittal was not in error.
 
 Expert Testimony
 
 36
 In United States v. Thomas, 74 F.3d 676, 681-82 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 1558 (1996),
 
 
 37
 "[a]ppellate review of trial court rulings on the admissibility of expert opinion testimony under Fed.R.Evid. 702, depending upon the assignment of error, may involve as many as three separate standards of review." First, we review the trial court's preliminary factfinding under Federal Rule of Evidence 104(a) for clear error. Second, the trial court's determination whether the opinion the expert will offer is properly the subject of "scientific, technical, or other specialized knowledge" is a question of law, which we review de novo. Third, the trial court's determination whether the proffered expert opinion will assist the trier of fact to understand the evidence or to determine a fact in issue is a determination of relevance, which this court reviews for abuse of discretion. In addition, the balancing of probative value against the potential for unfair prejudice under Federal Rule of Evidence 403 is also reviewed only for abuse of discretion.
 
 
 38
 Id. (citations omitted).
 
 
 39
 In the instant case, defendant argued that the opinion of Dr. Shirley Austin was inadmissable because Dr. Austin was not qualified as an expert in sampling procedures, and that her testimony therefore lacked foundation and was unhelpful to a jury due to its unreliability. Dr. Austin is a dentist with twenty years experience who serves as Dental Program Administrator for BCBSM. Her responsibilities at BCBSM include final approval authority on dental claims and the creation and review of dental policy. At trial, Dr. Austin testified that she had been requested to audit the patient records seized from defendant's office. Dr. Austin reviewed in detail the fifteen patient charts which formed the basis of the indictment for the benefit of the trier of fact. When asked if these fifteen files were representative of the "types of things" she found in the larger audit sample, Dr. Austin replied in the affirmative. (Tr., 3/14/95, at 57.) However, she never testified as to who performed the sampling, the sampling procedure, or what percentage of the total number of patient charts seized were represented by the sampling.
 
 
 40
 The trial court judge held that Dr. Austin was clearly qualified as an expert on the billing records and that defendant's objection went to the weight the jury should accord Dr. Austin's testimony rather than to admissibility. The trial court judge acted appropriately in allowing Dr. Austin to testify at trial about the fifteen files introduced by the Government. Defendant does not deny that Dr. Austin is an expert in reviewing billing practices, and these files were all admitted into evidence. Furthermore, it was appropriate for the trial court to allow Dr. Austin to testify that these files were representative of the other files she examined. Because she testified with respect to those files she actually examined, this Court need not address the issue of whether she was an expert in "sampling" at all. The trial court judge was correct: whether her answers were credible or not was an issue for the trier of fact. See United States v. August, 745 F.2d 400, 407 (6th Cir.1984) (jury may "determine the weight and credibility to be given to this testimony"). Defendant was able to utilize cross examination and closing argument to convince the jury that Dr. Austin's opinions regarding the representativeness of the sample lacked a firm factual foundation. United States v. L.E. Cooke Co., Inc., 991 F.2d 336, 342 (6th Cir.1993). Thus, we believe that the trial court judge ruled correctly on defendant's objections to Dr. Austin's testimony.
 
 Tax Returns
 
 41
 The trial court's decision to admit evidence over defendant's objections based upon Fed.R.Evid. 403 is reviewed for abuse of discretion. United States v. Carter, 969 F.2d 197, 200 (6th Cir.1992). Defendant objected to the introduction of his professional corporation's tax returns during the years at issue. Defendant contends that because his total professional compensation ranged between $390,000 and $880,000 a year, but the charges focused on less than 5% of his practice, the probative value of evidence regarding defendant's total income is substantially outweighed by its prejudicial effect. The Government argues that the tax returns were highly probative because defendant's insurance billings and payments were made through his professional corporation and the tax returns showed that defendant was president and 100% shareholder of the corporation. Thus, the Government argues, the tax returns were proof of defendant's financial incentive to commit fraud and are therefore evidence of specific intent to deceive.
 
 
 42
 We agree with the Government. It is within a trial court's discretion to admit tax returns in a mail fraud prosecution as proof of motive, and motive is evidence of specific intent to deceive. See United States v. Schnabel, 939 F.2d 197, 202 (4th Cir.1991). Furthermore, it is not clear that the tax returns were the least bit prejudicial to defendant's case. A juror may well conclude that someone making a large income but deriving little from allegedly fraudulent practices had little incentive to commit fraud. Thus, the trial court judge properly exercised his discretion in admitting into evidence defendant's tax returns for the years in question.
 
 Sentencing Considerations
 
 43
 The trial court's factual findings for sentencing purposes are reviewed for clear error, with due deference given the trial court's application of the Sentencing Guidelines to the facts of the case. United States v. Jackson, 25 F.3d 327, 330 (6th Cir.) (citing United States v. Peters, 15 F.3d 540, 546 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 219 (1994)), cert. denied, --- U.S. ----, 115 S.Ct. 344 (1994). A defendant "must carry the heavy burden of persuading this Court that the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations." Jackson, 25 F.3d at 330 (quoting U.S.S.G. § 2F1.1, comment. (n. 8) (sentencing court "need only make a reasonable estimate of the range of the loss, given the available information")).
 
 
 44
 In the instant case, the trial court judge was required to determine the amount of loss pursuant to U.S.S.G. § 2F1.1(b). The amount of loss for sentencing purposes must be established by a preponderance of the evidence. United States v. Kohlbach, 38 F.3d 832, 841 (6th Cir.1994). In sentencing the defendant, the trial judge accepted the figure contained in the revised presentence report, $378,334.33.
 
 
 45
 "[A] defendant who challenges factual allegations in the PSR [presentence report] has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." The burden of convincing the court that the PSR facts are true only shifts back to the prosecutor if the defendant carries his burden of production.
 
 
 46
 United States v. Rivera, 6 F.3d 431, 444 (7th Cir.) (citations omitted), cert. denied, 510 U.S. 1130, 114 S.Ct. 1098 (1994); see United States v. Leal, 75 F.3d 219, 229 (6th Cir.1996) ("in order for [defendant] to obtain any reduction in his sentence, he would have to demonstrate that [a number contained in the presentence report was] erroneously ascribed to him by the district court").
 
 
 47
 Defendant Dolan argues that the proposed loss amount contained in the amended presentence report was not established by a preponderance of the evidence at the sentencing hearing. Defendant contends that the $378,344.33 figure was premised upon two theories: (1) that no endodontic procedure could ever be billed to BCBSM medical/surgical insurance; and (2) that even if billing to this insurance were proper, defendant had not performed any of the endodontic procedures that could be properly billed to medical insurance. Defendant argues that the first premise was disproven by the Government's expert witnesses, Drs. Austin and Lanier, who testified that certain procedures performed by an endodontist could properly be billed to medical insurance. Defendant maintains that the second premise was disproven by Dr. Austin, who admitted that defendant may have performed procedures properly billed to medical insurance.
 
 
 48
 The Government contends that the $378,344.33 figure, like the figure in the original presentence report, was a conservative estimate calculated with respect to losses suffered by BCBSM only, and that the $378,344.33 figure represents an accurate compilation of the amounts billed to BCBSM over this period. The Government also notes that Dolan testified at trial that his billing practices with respect to BCBSM were consistent from 1982 onward. (Tr., 3/9/95, at 15.) The Government argues that while Dr. Austin testified that defendant is qualified to perform surgeries properly billed to medical insurance, there was no evidence that any of defendant's billings were proper despite defendant's complete access to his files, all of which were introduced as evidence at trial.
 
 
 49
 Given that defendant has been unable to produce evidence that even a single one of his billings was legitimate, we decline to hold that the trial court's factual findings were clearly erroneous.
 
 III.
 
 50
 For the reasons stated above, defendant's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Defendant cites United States v. Beros, 833 F.2d 455, 458 n. 3 (3d Cir.1987) for the proposition that a trial court's decision not to instruct a jury on unanimity of theory is reviewed for abuse of discretion. Beros, however, also noted that the more deferential "plain error" standard is applicable when no objection to the instruction is made or where no alternative jury instructions are proposed. Id
 
 
 [2]
 As an example, a patchwork verdict results when only six jurors agree that one specific illegal act was committed, while the other six agree that a different illegal act was committed, but the jury as a whole returns a guilty verdict. While there is no unanimity between the jurors as to all principal factual elements underlying the specified offense, the jurors are able to produce an inappropriate guilty verdict because they are all of the opinion that some illegal act was committed